*119 JUSTICE LEAPHART
delivered the Opinion to the Court.
¶1 The State of Montana appeals from the District Court’s order granting Bernard Richard Billman’s motion to dismiss for violation of his right to speedy trial in the Thirteenth Judicial District, Yellowstone County. We affirm.
¶2 We restate the issue as follows:
¶3 Did the District Court err when it granted Billman’s motion to dismiss for violation of his speedy trial right?
BACKGROUND
¶4 On January 27, 2006, Bernard Richard Billman (Billman) was arrested and jailed for driving under the influen ce of alcohol, a felony; driving while his driving privileges were suspended or revoked, a misdemeanor; and operating a motor vehicle without proof of liability insurance, a misdemeanor. The District Court set Billman’s bond at $7,000 and set Billman’s trial for June 19, 2006.
¶5 The District Court signed an order on June 29, 2006, continuing Billman’s trial date to August 21,2006, based on conflicts in the court’s docket. On August 25, 2006, the State moved to reset the trial for a date after October 1, 2006, because the State’s primary witness, the arresting officer, was unavailable due to training. The District Court then set a trial date for October 30, 2006, but later changed the date to November 1, 2006, due to docket control.
¶6 On October 30,2006, the prosecutor, defense counsel, and Billman appeared in court for a hearing on pretrial motions. Defense counsel orally moved to dismiss the case based on a violation of Billman’s speedy trial right. The District Court set a hearing on the motion for November 1, 2006, and rescheduled the trial date for December 4, 2006.
¶7 On November 1,2006, the District Court orally granted Billman’s speedy trial motion and released Billman from incarceration. The State subsequently appealed. While the State’s appeal was pending, we established a new framework for evaluating speedy trial claims in State v. Ariegwe, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. In light of the Ariegwe decision, we remanded this case to the District Court to enter findings of fact and conclusions of law pursuant to the Ariegwe analysis. The District Court conducted a speedy trial analysis and again granted Billman’s motion to dismiss for violation of his right to speedy trial. The State appeals.
*120 STANDARD OF REVIEW
¶8 Whether a defendant has been denied the right to a speedy trial presents a question of constitutional law. Ariegwe, ¶ 119. We review de novo a district court’s legal conclusions to determine whether the court correctly interpreted and applied the law. Ariegwe, ¶ 119. We will not disturb the factual findings underlying a speedy trial ruling unless the findings are clearly erroneous. Ariegwe, ¶ 119. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court committed a mistake. Ariegwe, ¶ 119.
DISCUSSION
¶9 Did the District Court err when it granted Billman’s motion to dismiss for violation of his speedy trial right?
¶10 The State maintains that the District Court erred in granting Billman’s motion to dismiss under speedy trial grounds. The State acknowledges that the underlying facts are “straightforward and mostly undisputed,” but argues that the District Court failed to engage in the balancing process that Ariegwe and Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972) require.
¶11 The United States Constitution and the Montana Constitution guarantee criminal defendants the right to a speedy trial. U.S. Const, amend. VI; Mont. Const, art. II, § 24. Our test to determine whether an accused has been denied the right to speedy trial rests on the Montana Constitution. Ariegwe, ¶ 35. We consider four factors when presented with a speedy trial claim: the length of the delay, the reasons for the delay, the accused’s responses to the delay, and prejudice to the accused. Ariegwe, ¶¶ 106-111. We then balance the four speedy trial factors to determine whether the accused has been denied the speedy trial right. Ariegwe, ¶ 112. Each factor’s significance varies based on the particular case’s unique facts and circumstances. Ariegwe, ¶ 105.
¶12 A. The speedy trial factors

1. The length of the delay

¶13 The State argues that the District Court incorrectly analyzed the first speedy trial factor. The State maintains that the short delay between the speedy trial triggering date and the trial date did not weigh in favor of Billman’s speedy trial motion.
¶14 A court addressing a speedy trial claim must first determine whether 200 days have elapsed between the accusation and the trial *121 date. Ariegwe, ¶ 41. If this 200-day threshold passes, a presumption of prejudice arises that pretrial delay has prejudiced the accused. Ariegwe, ¶ 56. A court must then consider the delay extending beyond the 200-day trigger date. Ariegwe, ¶ 62. As the pretrial delay increases, the presumption increases that the delay has prejudiced the accused and the State’s burden to justify the delay under the second speedy trial factor increases. Ariegwe, ¶ 62.
¶15 The District Court determined that the delay exceeded 200 days and that the first factor thus weighed in favor of granting Billman’s speedy trial motion. The court relied on two calculations to determine the amount of delay: (1) the interval between the triggering date and the date that the court granted Billman’s motion to dismiss, which the District Court calculated to be seventy-seven days, and, alternatively, (2) the interval between the accusation and the date of the court’s second order dismissing Billman’s case, which the District Court calculated to be 711 days. Regarding the court’s second calculation, any delay associated with the State’s initial appeal bears no relevance to Billman’s speedy trial claim. Following the court’s order, no criminal charges were pending against Billman, nor was he subjected to actual restrictions on his liberty, and thus, the speedy trial guarantee no longer applied. U.S. v. MacDonald, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982); U.S. v. Loud Hawk, 474 U.S. 302, 310-11, 106 S. Ct. 648, 653-54 (1986).
¶16 Though the District Court correctly determined that further speedy trial analysis had been triggered, the court failed to examine the intensifying effect of the delay beyond the triggering date. To examine the intensifying effect, a court must first determine the proper speedy trial timeframe; courts generally consider the interval between accusation and the scheduled trial date or the date on which an accused pleads guilty, whichever date reflects the case’s disposition. Ariegwe, ¶ 43; State v. Ellenburg, 2000 MT 232, ¶ 16, 301 Mont. 289, ¶ 16, 8 P.3d 801, ¶ 16. In this case, the District Court’s order granting Billman’s speedy trial motion disposed of the case, and thus, the date that the court ruled on Billman’s speedy trial motion reflects the case’s disposition.
¶17 We acknowledge our statement in Ariegwe that, “the interval between accusation and trial runs not to the date on which the accused’s speedy trial motion is considered by the court but, rather, to the scheduled trial date” or the date on which an accused pleads guilty, whichever date represents the case’s disposition. Ariegwe, ¶ 43 (citations omitted). This statement remains true when a court denies *122 a speedy trial motion because the denial does not dispose of the case. See State v. Kipp, 1999 MT 197, ¶ 9, 295 Mont. 399, ¶ 9, 984 P.2d 733, ¶ 9. When a court grants a speedy trial motion, however, that date becomes the date of the case’s disposition. Thus, the date that a district court grants a motion to dismiss based on speedy trial properly becomes the end date of the speedy trial interval. In this case, the District Court correctly used the date of Billman’s arrest to start the speedy trial clock and the date of its dismissal order as the end date. Officers arrested Billman on January 27,2006, and the District Court granted Billman’s motion to dismiss on November 1,2006. The length of the delay in this case amounts to 278 days, seventy-eight days beyond the speedy trial trigger.
¶18 We presume that the accused has experienced some prejudice once the 200-day threshold passes. Ariegwe, ¶ 56. That prejudice intensifies as the delay extends beyond the 200-day trigger date, and the State’s burden to justify the delay increases. Ariegwe, ¶ 62. In Ariegwe, the delay amounted to 208 days beyond the trigger date. Thus, we required the State to “provide particularly compelling justifications for the delay” under the second speedy trial factor and to “make a highly persuasive showing” that the delay did not prejudice Ariegwe under the fourth speedy trial factor. Ariegwe, ¶ 123. We also recognized that the quantum of proof expected from Ariegwe under the fourth factor correspondingly decreased. Ariegwe, ¶ 123. The delay in this case amounts to less than that in Ariegwe; however, 278 days of delay presents a considerable amount of delay, and we conclude that the State’s justifications for the delay must be compelling and that it must make a persuasive showing that the delay did not prejudice Billman. Further, the quantum of proof required from Billman under the fourth factor is correspondingly lower. Ariegwe, ¶ 113.

2. The reasons for the delay

¶19 The State concedes that it bears responsibility for the delay in this case. The State maintains, however, that the majority of the delay constitutes institutional delay and that valid reasons exist to justify the remaining delay. The State asserts that the District Court failed to assign culpability to the periods of delay, and the State argues that the court would have accorded little weight to this speedy trial factor if it properly had weighed the delay periods.
¶20 Under the second speedy trial factor, a court must identify each period of delay, attribute the delay to the appropriate party, and assign weight to the periods of delay based on the reasons for the delay. Ariegwe, ¶ 108. Delay is charged to the State unless the accused *123 caused the delay or affirmatively waived the speedy trial right for that period. Ariegwe, ¶ 108. Institutional delay and delay associated with valid reasons weighs less heavily against the State than delay resulting from the State’s lack of diligence or bad faith. Ariegwe, ¶ 108. Institutional delays are those that are inherent in the criminal justice system and due to circumstances beyond the control of the accused or the State; crowded court dockets and difficulties in setting trial dates often cause institutional delays. State v. Blair, 2004 MT 356, ¶ 19, 324 Mont. 444, ¶ 19, 103 P.3d 538, ¶ 19. Valid reasons for delay include the unavailability of a key prosecution witness or additional time to prepare for a particularly complex trial. Ariegwe, ¶ 70 (citations omitted). The “specific cause and culpability for each period of delay” bears significance when the factors are balanced. Ariegwe, ¶ 109.
¶21 The District Court concluded that the second speedy trial factor favored Billman’s motion to dismiss because the State bore responsibility for the entirety of the pretrial delay. The court cited “calendar clog” and the unavailability of the State’s witness as reasons for the delay. The court charged the delay to the State as institutional delay and noted that the delay associated with the State’s unavailable witness was also attributable to the State.

First Trial Setting

¶22 The delay between Billman’s arrest on January 27,2006, and his first trial date on June 19, 2006, amounts to 143 days of delay. This delay is attributable to the State. The delay associated with the initial trial setting constitutes delay that is inherent in the criminal justice system and beyond Billman’s or the State’s control; thus, the 143-day delay constitutes institutional delay. Blair, ¶ 19.

Second Trial Setting

¶23 The delay between Billman’s first trial date on June 19,2006, and Billman’s second trial date on August 21,2006, amounts to sixty-three days of delay. The District Court found that this delay was “based on docket control and other matters proceeding to trial.” Thus, the additional sixty-three days of delay are attributable to the State as institutional delay. Blair, ¶ 19.

Third Trial Setting

¶24 The delay between Billman’s second trial date on August 21,2006, and Billman’s third trial date on October 30,2006, amounts to seventy days. The District Court found that this delay was caused by the unavailability of the State’s primary witness, the arresting officer. The State concedes that the District Court correctly attributed the delay to the State, but asserts that the delay should weigh less than *124 institutional delay because the officer’s absence constituted a “valid reason” for delay.
¶25 Billman points out that the State filed its motion to continue after the trial date had passed. The arresting officer apparently was available to testify after October 1, 2006, and Billman argues that an earlier trial date may have been available if the State had moved for a continuance sooner. Billman contends that the time during which the State’s witness was available to testify-October 1,2006 to October 30, 2006-should weigh more heavily against the State.
¶26 Delays caused by the unavailability of prosecution witnesses on scheduled trial dates constitute valid reasons for delay. Ariegwe, ¶ 70 (citations omitted). For example, in State v. Johnson, the State moved for two continuances because key witnesses were unavailable for scheduled trial dates. 2000 MT 180, ¶ 9, 300 Mont. 367, ¶ 9, 4 P.3d 654, ¶ 9. We determined that the State’s culpability was minimal because the State engaged in no “intentional or purposeful foot-dragging” and harbored no motive to cause undue delay. Johnson, ¶ 20. In Johnson, the State moved for continuances before the scheduled trial dates. Johnson, ¶ 9.
¶27 In this case, the State’s primary witness was unavailable for the August 21, 2006 trial date because of training. The record reveals no bad faith motives on the part of the State and, generally, the officer’s unavailability would constitute a valid reason for delay. Johnson, ¶ 20. Unlike Johnson, however, the State moved for a continuance four days after the scheduled trial date passed. The State offers no explanation for its late motion. The State bears the burden to explain pretrial delays. Ariegwe, ¶ 64. In light of the State’s failure to provide any explanation, we agree with Billman that the thirty-day portion of the delay when the officer was available to testify should weigh more heavily against the State. Although the record does not indicate that the State engaged in bad faith or “purposeful foot-dragging,” nor does it reveal the reasons that the State failed to move for a continuance until after the trial date had passed. The timing of the motion is within the control of the prosecutor, and thus, the delay is not institutional. We conclude that the thirty-day delay should be accorded the weight associated with negligence or lack of diligence on the part of the prosecutor. Accordingly, forty days of the delay associated with the third trial setting weigh minimally against the State because valid reasons existed for the delay, and thirty days of the delay weigh more heavily against the State due to its apparent lack of diligence.

*125
Fourth Trial Setting

¶28 The delay between. Billman’s third trial date on October 30,2006, and Billman’s fourth trial date on November 1, 2006, amounts to two days of delay. The District Court found that this delay was based on docket control. Thus, the additional two days of delay are attributable to the State as institutional delay. Blair, ¶ 19.

Fifth Trial Setting

¶29 The delay between Billman’s fourth trial date on November 1, 2006, and Billman’s fifth trial date on December 4, 2006, amounts to thirty-three days of delay. This delay resulted from Billman’s speedy trial motion. Delay resulting from a speedy trial motion is attributable to the accused if the motion is filed less than thirty days prior to a scheduled trial date. Ariegwe, ¶ 116. Billman moved for dismissal two days before his scheduled trial date; thus, the delay generally would be attributable to Billman. In this case, however, the District Court granted Billman’s speedy trial motion on November 1, 2006, which disposed of the case, and the District Court released Billman from incarceration the same day. As discussed in ¶¶ 16-17, the proper timeframe in a speedy trial analysis is the interval between accusation and a case’s disposition. Ariegwe, ¶ 43, Ellenburg, ¶ 16. Further, as Billman no longer faced pending criminal charges or actual restrictions on his liberty, the speedy trial guarantee no longer applied. MacDonald, 456 U.S. at 8, 102 S. Ct. at 1502; Loud Hawk, 474 U.S. at 310-11, 106 S. Ct. at 653-54. Accordingly, the thirty-three-day delay associated with Billman’s motion does not factor into our speedy trial analysis.
¶30 In summary, the interval between Billman’s accusation and the final disposition of his case amounted to 278 days. The entire 278-day delay is attributable to the State: 208 days of institutional delay, 40 days of delay caused by valid reasons, and 30 days of delay resulting from the State’s lack of diligence. Billman bears no responsibility for any of the pretrial delay. The State burden to explain pretrial delays increases as the pretrial delay lengthens. Ariegwe, ¶ 107. The majority of delay in this case amounts to institutional delay. Nonetheless, the State and the courts bear the burden to promptly try cases. Barker, 407 U.S. at 529, 92 S. Ct. at 2191. Further, the delay that courts will tolerate for simple cases is considerably less than for complex cases. Barker, 407 U.S. at 531, 92 S. Ct. at 2192. Thus, we conclude that the second speedy trial factor weighs in Billman’s favor.

3. The accused’s responses to the delay

¶31 Under the third speedy trial factor, a court must evaluate the *126 totality of the accused’s responses to the pretrial delay to determine whether the accused actually wanted a speedy trial, a key consideration in determining whether the accused’s speedy trial right has been violated. Ariegwe, ¶ 110. This evaluation also guides courts in determining the weight to accord the other speedy trial factors. Ariegwe, ¶ 110.
¶32 The District Court found that Billman never waived his speedy trial right. The court also found that Billman asserted his speedy trial right, expressed concerns regarding continuances that were beyond his control, and expressed his desire for a trial. The court concluded that Billman did not acquiesce to any pretrial delay and that Billman sincerely wanted a speedy trial. The District Court accorded this significant weight in considering the other factors.
¶33 The totality of Billman’s various responses to the pretrial delay indicate that Billman wanted a speedy trial. Following the second trial continuance, Billman wrote a letter to the District Court complaining that his trial had been rescheduled twice after the trial dates already had passed. Billman’s letter expressed his frustration with not receiving notice of the continued trials until after the trial dates had passed and with spending over seven months incarcerated while “trying to get this matter resolved.”
¶34 Additionally, Billman’s communications with his attorneys indicate that Billman sincerely wanted a speedy trial. In June, Billman rejected a plea agreement from the prosecutor and informed his attorney that he wanted a jury trial. In September or October of 2006, Billman asked his attorney to file a motion to dismiss based on the speedy trial right. Billman’s attorney advised him that the decisions regarding a speedy trial motion fell within the attorney’s discretion; the speedy trial motion was not filed until October 30, 2006.
¶35 We accord no significant weight to the timing of Billman’s speedy trial motion. At the time of Billman’s motion, counsel and the courts were operating under the speedy trial test and the presumptions set forth in City of Billings v. Bruce, 1998 MT 186, 290 Mont. 148, 965 P.2d 866. Billman’s motion was filed on Monday, October 30,2006,276 days after Billman’s arrest, the first business-day following the burden-shift to the State to demonstrate that pretrial delay had not prejudiced Billman. We accord significant weight, however, to Billman’s communications to the District Court and counsel. These communications indicate that Billman sincerely wanted a speedy trial. Additionally, as discussed under the second speedy trial factor, Billman bore no responsibility for any of the pretrial delay, nor did *127 Billman waive his speedy trial right. We conclude that the third speedy trial factor weighs heavily in favor of the conclusion that Billman was denied his speedy trial right, and we accord this factor significant weight in the overall balancing.

4. Prejudice to the accused

¶36 Under the fourth speedy trial factor, a court must examine whether the pretrial delay has prejudiced the accused in light of the interests that the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused’s anxiety and concern; and (3) limiting the possibility that pretrial delay will impair the accused’s defense. Ariegwe, ¶ 111. A presumption arises that pretrial delay has prejudiced the accused when the speedy trial analysis is triggered, and this presumption increases as the delay increases. Ariegwe, ¶ 56. We require the accused to present evidence establishing prejudice and the State to present evidence showing a lack of prejudice. Ariegwe, ¶ 56. As discussed in ¶ 18, based on the 278-day delay, the State must make a persuasive showing that the pretrial delay did not prejudice Billman, and the quantum of proof required from Billman is correspondingly lower.
¶37 1. Oppressive pretrial incarceration
¶38 We determine whether pretrial incarceration is oppressive by considering the duration of incarceration, the complexity of the charged offenses, whether the accused engaged in any misconduct related to the incarceration, and the conditions of the incarceration. Ariegwe, ¶ 113.
¶39 The likelihood that incarceration has been oppressive and prejudiced the accused increases as the duration of pretrial incarceration increases. Ariegwe, ¶ 90. The State acknowledges that Billman was incarcerated from his arrest on January 27, 2006, until the District Court granted his speedy trial motion on November 1, 2006, a total of 278 days. Billman’s incarceration stemmed entirely from the charges and his inability to post bond, not from any subsequent misconduct on his part.
¶40 We tolerate considerably less delay for a simple offense than for a complex charge. Ariegwe, ¶ 91. The State acknowledges that the charges against Billman constituted relatively simple charges. The State’s argument at the speedy trial hearing underscores this point. According to the prosecutor, the State had responded to Billman’s discovery requests by February 14, 2006, approximately two weeks after Billman’s arrest, and the State intended to call only one witness at trial. Thus, Billman remained jailed for 260 days after the discovery *128 was completed in a straightforward Felony DUI prosecution.
¶41 Billman also specifically points to his age, his indigence, and his anxiety and depression to illustrate the oppressive conditions of his incarceration. Although these considerations are relevant in a speedy trial analysis, they are more properly considered under the second interest that the speedy trial right protects. When analyzing the conditions of the incarceration to assess oppressiveness, we focus on the condition of the facilities and how they impact the accused, rather than solely on the condition of the accused. For example, courts determining whether an accused’s incarceration was oppressive might focus on whether a facility lacks recreational opportunity, appropriate medical care, adequate food, and legal research capabilities. Ariegwe, ¶ 93. Billman raises no challenges to the conditions of his incarceration. In this case, however, the lengthy incarceration coupled with the relatively simple charges establishes that pretrial delay prejudiced Billman.
¶42 2. Anxiety and concern
¶43 Criminal charges engender a certain amount of inherent anxiety and concern; thus, we focus on the extent that the pretrial delay has unduly prolonged the disruption of the accused’s life or aggravated the accused’s anxiety and concern. Ariegwe, ¶ 97. Our considerations include employment loss, financial and economic loss, and whether the accused’s associations were curtailed. Ariegwe, ¶ 113.
¶44 The District Court found that Billman experienced substantial anxiety and concern due to the pretrial delay in his case. The court considered significant Billman’s testimony that he began taking medication for depression and anxiety following his incarceration. The court also concluded that Billman suffered economic hardship by being unable to work during his incarceration.
¶45 The State asserted at the speedy trial hearing that Billman’s testimony was not credible; on appeal, the State maintains that Billman’s testimony was “brief and uncertain” on this issue. We defer to the District Court’s judgment on issues of witness credibility. In re T.L. 2005 MT 256, ¶ 18, 329 Mont. 58, ¶ 18, 122 P.3d 453, ¶ 18. Our review of the record convinces us that the District Court’s findings are not clearly erroneous. Billman testified that he worked at the sugar beet factory at the time of his arrest and that he would have worked as a welder at Agri-Systems following his employment with the sugar beet factory. Billman testified that he started taking antidepressants and anti-anxiety medication as a result of his incarceration. Billman further testified that since being jailed he could no longer see his boys. *129 Moreover, Billman’s letter to the court indicated that his anxiety and concern were not due to the nature of the charges, but due to the length of the pretrial delay. In his letter, Billman complained about the repeated continuances and stated, “I have lost my job, so I sit in jail until ‘god knows when’ or until they break me and [force] me to ‘plead guilty* although I am a innocent man.... The 18 hours of lock down day after day has taken a severe toll on me mentally and physically.” (Paragraph break omitted.) We agree with the District Court that Billman’s pretrial incarceration unduly prolonged the disruption to his life and aggravated Billman’s anxiety and concern.
¶46 3. Impairment of the defense
¶47 Limiting the possibility that pretrial delay will impair the accused’s defense arguably is the most important interest that the speedy trial right protects because an accused’s inability to present an effective defense undermines the fairness of the system. Ariegwe, ¶ 98. The accused’s failure to submit affirmative proof of prejudice is not fatal to a speedy trial claim, and, in the absence of affirmative proof of impairment, we focus on the other speedy trial factors to assess whether the pretrial delay has prejudiced the accused’s defense. Ariegwe, ¶¶ 99-100. Pretrial delay prejudices an accused if defense witnesses are unable to accurately recall past events. Barker, 407 U.S. at 532, 92 S. Ct. at 2193.
¶48 The State maintains that the pretrial delay did not prejudice Billman’s defense. According to the State, the charges against Billman “were relatively simple” and the pretrial delay would not have threatened the fairness of Billman’s trial. The District Court concluded that the pretrial delay moderately impaired Billman’s ability to present a defense. The District Court determined that Billman’s incarceration impeded his ability to adequately prepare a defense and also noted that Billman’s memory faded during his incarceration, which hindered his ability to testify effectively. Billman’s testimony at the speedy trial hearing supports the court’s conclusion that Billman’s memory faded regarding the events surrounding his arrest. Additionally, the other speedy trial factors-the length of delay, Billman’s responses to the delay, and Billman’s incarceration for the entirety of the lower proceedings-indicate that the pretrial delay impaired Billman’s ability to present an effective defense.
¶49 B. Balancing the speedy trial factors
¶50 We balance the four speedy trial factors to determine whether an accused has been denied the speedy trial right. Ariegwe, ¶ 112. The State concedes that the first three speedy trial factors “arguably weigh *130 in Billman’s favor,” but argues that it “made a persuasive showing” that the pretrial delay did not unduly prejudice Billman. We accord no single factor dispositive weight; rather, we consider the factors together with other relevant circumstances. Ariegwe, ¶ 112.
¶51 The first speedy trial factor, the length of the delay, establishes a pretrial delay of 278 days and weighs in Billman’s favor. The second factor, the reasons for the delay, also weighs in Billman’s favor because the State bears responsibility for the entire pretrial delay; though institutional delay constitutes the majority of pretrial delay, it nonetheless weighs against the State. The third speedy trial factor, the accused’s responses to the delay, indicates that Billman sincerely wanted a speedy trial; this factor weighs heavily in Billman’s favor. Finally, the fourth factor, prejudice to the accused, weighs in Billman’s favor. Though the State questioned the source of Billman’s anxiety and concern, the State failed to persuasively show that Billman’s anxiety and concern were not due to the pretrial delay. Billman, on the other hand, produced evidence that supported the District Court’s finding that Billman’s anxiety and concern were due to the pretrial delay. Further, Billman’s testimony showed his inability to accurately recall the events surrounding his arrest.
¶52 We conclude that the State failed to persuasively show that the pretrial delay did not prejudice Billman. We agree with the District Court that all of the speedy trial factors weigh in Billman’s favor, and thus, we affirm the District Court’s conclusion that Billman was denied his right to speedy trial.
CHIEF JUSTICE GRAY, JUSTICES COTTER, WARNER, and MORRIS concur.