
DA 13-0560

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 173

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

DAVID MICHAEL ZIMMERMAN,

        Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. CDC 2013-07
                    Honorable Kathy Seeley, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Richard Bartos, Bartos Law Offices, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
                Attorney General, Helena, Montana

                Leo Gallagher, Lewis and Clark County Attorney, Jeffrey Sealey, Deputy
                County Attorney, Helena, Montana


                        Submitted on Briefs:  April 30, 2014
                                    Decided:  July 3, 2014


Filed:

                        _____
                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 David Zimmerman appeals from the order of the First Judicial District Court, Lewis and Clark County, denying his motion to dismiss for lack of a speedy trial. We reverse and remand for dismissal of the charges.

¶2 The issue on appeal is whether the delay in bringing Zimmerman to trial violated his constitutional right to a speedy trial.

## BACKGROUND

¶3 During the early morning hours of July 21, 2012, Officer William Harrington of the City of East Helena Police Department observed a pickup truck that appeared to be exceeding the posted 25-mile-per-hour speed limit. Harrington activated his radar unit, which registered the pickup's speed as 41 miles per hour. Harrington initiated a traffic stop and made contact with the driver (Zimmerman). Based on his observations at the scene, Harrington conducted a DUI investigation. Ultimately, Zimmerman was arrested for driving under the influence of alcohol, fourth or subsequent offense, a felony, in violation of §§ 61-8-401 and -731, MCA. He was also cited with misdemeanor traffic offenses. Zimmerman's driving privileges were revoked due to his refusal to submit to a preliminary breath test. *See* § 61-8-402, MCA.

¶4 Zimmerman made his initial appearance in Lewis and Clark County Justice Court on July 23, 2012. The Justice Court scheduled a preliminary hearing under § 46-10-105, MCA, for August 3. Zimmerman retained counsel, who filed a notice of appearance on July 31 and requested that the preliminary hearing be continued due to a scheduling conflict. Counsel also represented that the assigned prosecutor would be unavailable for

2

the two weeks immediately following August 3, 2012. The Justice Court vacated the August 3 preliminary hearing; however, the court did not reschedule the preliminary hearing and, ultimately, a preliminary hearing was never conducted.

¶5 Zimmerman was incarcerated for three days following his arrest. He borrowed money from family members in order to post bail of $10,000. Following his release, Zimmerman was prohibited from consuming alcohol and was required, as a condition of release, to submit to regular testing for alcohol use. He was given the choice of either going to the police station twice daily (every 12 hours) to provide a breath sample or, alternatively, wearing an electronic leg bracelet (a Secure Continuous Remote Alcohol Monitor, or SCRAM) that continuously monitors alcohol consumption. Zimmerman elected a leg bracelet. This option required him to report to county officials once a week to have the alcohol monitoring device checked for compliance. It also required him to pay $56 weekly for the use of the device and the monitoring program. Zimmerman wore the bracelet on his right leg continuously for the ensuing nine to ten months and was still wearing it at the time the District Court decided his speedy trial motion. He complied with the program and was found to be alcohol free throughout the pretrial period.

¶6 The State took no action in regard to Zimmerman's case until mid-January 2013. The prosecutor later explained (in response to Zimmerman's speedy trial motion) that the case had "fall[en] off the Court's calendar" and "went into a state of limbo until counsel for the State realized the matter was pending without [a] date." On January 15, 2013, the prosecutor filed a motion for leave to file an information in the District Court. The court granted the motion, and an information was filed on January 15 charging Zimmerman

3

with felony DUI and misdemeanor driving without valid liability insurance. Zimmerman made his initial appearance on January 17. At his arraignment on January 31, he entered pleas of not guilty and stated that he would be raising a speedy trial issue. The District Court set the omnibus hearing for March 21, 2013, and the trial for May 6, 2013.

¶7 Zimmerman filed a motion to dismiss for denial of his right to a speedy trial on April 4, 2013. Applying the balancing test we adopted in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815, he argued that he was not responsible for any of the 289-day delay between his July 21, 2012 arrest and his May 6, 2013 trial date.[1] He further asserted that the State had been negligent, or failed to act diligently, in bringing him to trial. He observed that he had asserted his right to a speedy trial promptly at his first appearance before the District Court after the Information was filed, that he had not requested any continuances of his trial date, and that he had not taken any actions that would have prevented the State from prosecuting the case. Finally, Zimmerman argued that he had been prejudiced by the delay for various reasons.

¶8 The District Court held an evidentiary hearing at which Zimmerman provided testimony in support of his speedy trial motion. On the issue of prejudice, he noted that the SCRAM bracelet had been strapped to his leg continuously for eight and a half months. This had cost him over $2,000 thus far. He contended that the device limited his work as a construction and carpentry worker because, to preclude the possibility of alcohol entering his system, he had to avoid chemicals that may contain alcohol, such as

---

[1] Although Zimmerman calculated this period as 290 days, and the State and the District Court conducted their respective analyses based on that number, the correct number is 289 days.

4

pipe solder, construction glue, paint removers, and other solutions. He stated that both the existence of a pending felony charge against him and the condition of his release prohibiting him from leaving Lewis and Clark County had hindered his ability to secure stable employment which, in turn, had prevented him from providing appropriate financial support for his two-year-old daughter. Moreover, he testified that he no longer had any assets, home, or vehicle and that he had been forced to live with his brother. Zimmerman admitted that he had experienced some depression prior to his arrest, but he stated that his anxiety, stress, and depression had worsened due to the pretrial delay. He noted that he had seen a doctor for his mental health issues and was prescribed antidepressants in February 2013. Finally, Zimmerman asserted that his ability to present a defense had been impaired due to his and Officer Harrington's fading memories of the incident.

¶9 During cross-examination, Zimmerman was asked about the six-month period between his arrest and the filing of the Information. He testified that he had maintained contact with his attorney, but that he had never asked his attorney to get his case back on the Justice Court's calendar. He explained, "I didn't think it was my duty."

¶10 The District Court entered an order denying the motion to dismiss. The court's reasoning will be discussed below. Zimmerman then changed his plea to guilty on both charges, reserving the right to appeal the denial of his speedy trial motion. On the DUI offense, the court sentenced him to the Department of Corrections for thirteen months, followed by a four-year suspended sentence. For failing to have valid liability insurance, the court imposed a fine.

5

**STANDARDS OF REVIEW**

¶11 We apply two standards when reviewing a trial court's ruling on a speedy trial motion. First, we review the factual findings underlying the court's ruling to determine whether those findings are clearly erroneous. *Ariegwe*, ¶ 119. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119. Second, whether the factual circumstances, when evaluated pursuant to the four-factor balancing test, amount to a speedy trial violation presents a question of constitutional law, which we review de novo to determine whether the trial court correctly interpreted and applied the law. *Ariegwe*, ¶ 119; *State v. Couture*, 2010 MT 201, ¶ 47 n. 2, 357 Mont. 398, 240 P.3d 987 (on questions of law, the parties are entitled to full review by the appellate court without special deference to the views of the trial court).

**DISCUSSION**

¶12 A criminal defendant's right to a speedy trial is a fundamental constitutional right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution. *Ariegwe*, ¶ 20; *State v. Stops*, 2013 MT 131, ¶ 18, 370 Mont. 226, 301 P.3d 811. It has been acknowledged that this right has an "amorphous quality" in the sense that it is "impossible to determine with precision . . . how long is too long in a system where justice is supposed to be swift but deliberate." *Barker v. Wingo*, 407 U.S. 514, 521, 522, 92 S. Ct. 2182, 2187, 2188 (1972); *accord Ariegwe*, ¶ 91. As a result, the right to a speedy trial is necessarily relative and

6

depends upon the circumstances of the case. *Ariegwe*, ¶ 104. To determine whether the delay in bringing the accused to trial amounts to a violation of the right, we apply a balancing test that takes into consideration (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused as a result of the delay. We balance these factors, and any other relevant circumstances, to determine whether the accused has been deprived of his or her right. *Couture*, ¶ 46; *Stops*, ¶ 19. No one factor is dispositive by itself; the factors are related and must be considered together with such other circumstances as may be relevant. *Ariegwe*, ¶ 112. Each factor's significance will vary from case to case. *Ariegwe*, ¶ 105.

### Factor One: The Length of the Delay

¶13 Under Factor One, we first ascertain whether the interval between accusation and trial (irrespective of fault for the delay) is at least 200 days, which is the trigger date for conducting the four-factor balancing test. *Ariegwe*, ¶ 107. In the present case, the delay between Zimmerman's July 21, 2012 arrest and his May 6, 2013 trial date was 289 days.

¶14 We next consider the extent to which the delay (again, irrespective of fault) stretches beyond the trigger date. *Ariegwe*, ¶ 107. The significance of this determination is twofold: the further the delay stretches beyond the trigger date, the stronger the presumption is under Factor Four that the accused has been prejudiced by the delay, and the heavier the State's burden is under Factor Two to provide valid justifications for the delay. *Ariegwe*, ¶¶ 49, 61. Here, the District Court reasoned that an 89-day delay beyond the 200-day trigger date is not particularly long and, therefore, that the State's burdens under Factors Two and Four are relatively low. We agree with this conclusion, which is

7

consistent with our caselaw. *See State v. Morrisey*, 2009 MT 201, ¶ 53, 351 Mont. 144, 214 P.3d 708; *State v. Charlie*, 2010 MT 195, ¶¶ 50, 59, 357 Mont. 355, 239 P.3d 934.

### Factor Two: The Reasons for the Delay

¶15 Under Factor Two, we first identify each period of delay. *Ariegwe*, ¶ 63. Often, the periods of delay will correspond with the different trial settings. *See e.g. Ariegwe*, ¶¶ 125-133; *Morrisey*, ¶¶ 55-65. In other cases, where there was a significant delay in setting the first trial date, it is necessary to identify the causes for that delay and to apportion periods of time accordingly. *See e.g. Couture*, ¶¶ 80-89. Because the question is one of "delay," we are not concerned with actions or events that did not result in a delay of the trial. *Couture*, ¶ 71. After identifying each period of delay, we attribute the delay to the responsible party. *Couture*, ¶ 71. The prosecution bears the burden of explaining pretrial delays, and any delay not shown to have been caused by the accused or affirmatively waived by the accused is attributed to the State. *Ariegwe*, ¶¶ 64-65.

¶16 Here, the District Court identified two causes for the delay in Zimmerman's first (and only) trial setting: (1) the State caused a 178-day delay by failing to take any action on the case for nearly six months, and (2) once the Information was filed in January 2013, the court's first available trial date was not until May 2013, which resulted in a 111-day delay attributable to the State. The court thus assigned the entire 289-day delay to the State, implicitly finding that Zimmerman had taken no action to delay his trial.

¶17 The State posits that "a few days" of the initial 178-day delay should be attributed to Zimmerman because he requested a continuance of the preliminary hearing. In this regard, the prosecutor accepted partial "blame for the matter falling off the [Justice]

8

Court's calendar" and going "into a state of limbo until counsel for the State realized the matter was pending without [a] date." The prosecutor argued, however, that Zimmerman should "share some responsibility" because he requested the continuance and had an "obligation to ensure" that the Justice Court rescheduled the hearing. We disagree.

¶18 First, such an argument comes close to imposing on the defendant the onus of getting his case to trial in a timely fashion, which is incorrect. "[A] defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State avoid dismissal for failure to timely prosecute him." *State v. Blair*, 2004 MT 356, ¶ 23, 324 Mont. 444, 103 P.3d 538. "[T]he prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner[,] and . . . this duty requires a good faith, diligent effort to bring him to trial quickly." *Ariegwe*, ¶ 65 (internal quotation marks omitted). Second, Zimmerman's request for a continuance of the preliminary hearing did not delay his trial date, and thus we do not consider this event. *Ariegwe*, ¶ 63; *Couture*, ¶ 82 n. 6. Because he had been accused of a felony, his case ultimately needed to be filed in the District Court. Section 3-5-302, MCA. As the District Court noted, the State could have filed a motion for leave to file an information in the District Court at any time prior to a preliminary hearing. Section 46-10-105(2), MCA. Thus, the District Court was correct in attributing all of the 178 days to the State.

¶19 After identifying and attributing each period of delay, we assign weight to each period based on the specific cause and motive for the delay. *Couture*, ¶ 71. The weight assigned to a particular period of delay will depend on the party's culpability in causing it. *Ariegwe*, ¶ 67. Delay caused by the prosecution in bad faith—such as a deliberate

9

attempt to hamper the defense—weighs heavily against the State. *Ariegwe*, ¶ 67. Delay caused by negligence or lack of diligence by the prosecution occupies a middle ground, though "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Ariegwe*, ¶ 69 (internal quotation marks omitted). Institutional delay—that is, delay inherent in the criminal justice system and caused by circumstances largely beyond the control of the prosecutor and the accused—is attributable to the State, but weighs less heavily against it than delay caused by bad faith, negligence, or lack of diligence. *Ariegwe*, ¶ 68; *Couture*, ¶ 72.

¶20 The District Court determined that the 178-day delay between Zimmerman's arrest (July 21, 2012) and the State's motion for leave to file the Information (January 15, 2013) was due to "a lack of diligence by the State in bringing the matter forward." The District Court further determined that the 111-day delay between the State's motion for leave to file the Information and the May 6, 2013 trial date was institutional delay, occasioned by the court's crowded docket. The record supports these classifications.

¶21 As for the significance of these classifications in the overall balancing, we have recognized that the amount of pretrial delay that is customary in a given case is a function of the complexity of the charged offense(s). *Ariegwe*, ¶ 41; *State v. Billman*, 2008 MT 326, ¶¶ 30, 40, 346 Mont. 118, 194 P.3d 58. Here, the two charges (DUI and no liability insurance) were relatively simple, ordinary driving offenses for which the tolerable delay is relatively low. *Billman*, ¶ 40; *Ariegwe*, ¶ 70. Additionally, the delay of six months between Zimmerman's arrest and the prosecutor's motion for leave to file the Information—nearly two-thirds of the delay in this case—was due to the State's lack of

10

diligence.  This is an unacceptable reason for delay.  *Ariegwe*, ¶ 69; *Blair*, ¶¶ 23-24.

Accordingly, given that all of the 289-day delay is attributable to the State, that the initial

178 days were due to lack of diligence, and that the charges were relatively simple,

Factor Two weighs heavily against the State.

**Factor Three: The Accused's Responses to the Delay**

¶22    In assessing the accused's responses to the pretrial delay, the issue is not simply

the number of times the accused acquiesced or objected.  Rather, the focus is on the

surrounding circumstances, including whether the accused asserted the speedy trial right;

the timeliness, persistence, and sincerity of the accused's objections to delay; the reasons

for any acquiescence in delay; whether the accused was represented by counsel; and the

accused's pretrial conduct (as that conduct bears on the speedy trial right).  *Couture*, ¶ 50;

*Ariegwe*, ¶ 76.   The totality of the accused's responses to the delay is indicative of

whether he actually wanted a speedy trial and provides guidance in balancing the other

factors.  *Couture*, ¶ 50.

¶23    Implicit in any analysis under Factor Three is the principle that the right to a

speedy trial is "'generically different'" from the other rights enshrined in the Constitution

for the accused's protection.  *Ariegwe*, ¶ 75 (quoting *Barker*, 407 U.S. at 519, 92 S. Ct. at

2186).   Deprivation of the right to a speedy trial may actually work to the accused's

advantage if, for example, prosecution witnesses become unavailable or their memories

fade.  *Ariegwe*, ¶ 75 (citing *Barker*, 407 U.S. at 521, 92 S. Ct. at 2187).   Hence, the

primary purpose of Factor Three is to assess "whether the accused actually wanted to be

brought to trial promptly."  *Ariegwe*, ¶ 76.

11

¶24 A court "may not infer that the accused did not want a speedy trial *solely* because he or she did not object to pretrial delay often or at all." *Ariegwe*, ¶ 82 (emphasis in original). Such an inference would conflict with two core principles: first, the accused is under no obligation to ensure diligent prosecution of the case against him, *Blair*, ¶ 23, and has no duty to bring himself to trial, *Ariegwe*, ¶ 82; and second, courts should not presume acquiescence in the loss of fundamental rights, *Ariegwe*, ¶ 83. Thus, failure to object to pretrial delay does not, by itself, establish that the accused did not want a speedy trial or that the speedy trial right has not been violated. *Ariegwe*, ¶ 82.

¶25 Zimmerman promptly asserted his right to a speedy trial once the Information was filed. This fact weighs in his favor. The disputed issue, however, concerns the period between his arrest and the filing of the Information, during which he voiced no objections to the delay. In this regard, the District Court observed that Zimmerman was represented by counsel within approximately a week of being charged. The court further observed that Zimmerman requested a continuance of the preliminary hearing "but did nothing thereafter, despite the fact that he was subjected to continuous monitoring and reporting." It appears the court weighed this fact against Zimmerman.

¶26 In order to weigh Zimmerman's inaction against him for purposes of Factor Three, the record must establish, one way or another, whether he actually wanted a speedy trial. As noted, Zimmerman's prosecution in the District Court, where it was ultimately destined, had not yet begun. Thus, there was no pending action in the District Court in which Zimmerman could have filed a pleading or made a request indicating his desire for a speedy trial. Were we to conclude that Zimmerman's inaction should be weighed

against him, we effectively would be requiring a defendant to bring himself to trial by initiating some action, ahead of the prosecution, in the district court. Similarly, while Zimmerman may have refrained from calling attention to the apparent inadvertence of the Justice Court and lack of diligence by the prosecution in resetting the preliminary hearing, this inaction does not necessarily lead to a conclusion or inference that he did not want a speedy trial. Zimmerman's inaction is just as consistent with the inference that he knew his prosecution was destined for district court, whenever the State chose to file the appropriate pleading, and that his next appearance thus would be in the District Court, not the Justice Court. His situation is distinguishable from cases that assess an accused's actual response, not just inaction, and conclude that the response demonstrates a lack of sincerity or persistence in actually obtaining a speedy trial. *See e.g. State v. MacGregor*, 2013 MT 297, ¶¶ 36-37, 372 Mont. 142, 311 P.3d 428; *State v. Morsette*, 2013 MT 270, ¶ 14, 372 Mont. 38, 309 P.3d 978; *State v. Stops*, 2013 MT 131, ¶ 40, 370 Mont. 226, 301 P.3d 811; *State v. Houghton*, 2010 MT 145, ¶ 30, 357 Mont. 9, 234 P.3d 904.

¶27 While a defendant's failure to object to a delay of many months or years may be a valid consideration indicating that he did not want to be brought to trial quickly, *see Ariegwe*, ¶¶ 76-77; *Doggett v. U.S.*, 505 U.S. 647, 653, 112 S. Ct. 2686, 2691 (1992), we cannot draw such a conclusion on the record here. There is no evidence that Zimmerman acquiesced in the delay for tactical purposes or that he did not actually want to be brought to trial promptly. Accordingly, based on the record before us, on the State's and the trial court's constitutional obligation to try the defendant in a timely manner, and on our strong precedent establishing that the accused is under no obligation to bring himself to

13

trial, *Couture*, ¶ 78; *Ariegwe*, ¶¶ 64-65; *Blair*, ¶¶ 23-24; *State v. Lacey*, 2010 MT 6, ¶ 17, 355 Mont. 31, 224 P.3d 1247; *accord Barker*, 407 U.S. at 527, 529, 92 S. Ct. at 2190, 2191, we conclude that Zimmerman's inaction should not be weighed against him.

### Factor Four: Prejudice to the Accused

¶28    Under Factor Four, we consider whether the accused has been prejudiced by the pretrial delay in light of the interests that the speedy trial right was designed to protect: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern caused by the presence of unresolved criminal charges, and (iii) limiting the possibility that the accused's ability to present an effective defense will be impaired. *Ariegwe*, ¶ 111.  The parties dispute each of these interests in the present case.

### i. Prevent Oppressive Pretrial Incarceration

¶29    The speedy trial guarantee serves to minimize the possibility of oppressive incarceration prior to trial.  *Ariegwe*, ¶ 87.  Whether an accused's pretrial incarceration was oppressive depends on the particular circumstances, including the duration of the incarceration, the conditions of the incarceration, the complexity of the charged offense(s), and any misconduct by the accused directly related to his incarceration. *Couture*, ¶ 56.  Zimmerman was incarcerated for three days, which the District Court found was not oppressive.  Zimmerman does not dispute this determination.

¶30    Particular to these proceedings, the speedy trial guarantee also serves to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail.  *Ariegwe*, ¶ 87.  The District Court observed that SCRAM monitoring was "inconvenient and costly" for Zimmerman, but the court did not believe it was

14

oppressive or overly lengthy. The State similarly characterizes the SCRAM monitoring as only a "minor restriction."

¶31 While we are reluctant to conclude that a SCRAM bracelet is only a "minor restriction" as the State urges or an "inconvenience" as the District Court described, we recognize that this method of monitoring is attractive to defendants precisely because it is less oppressive than pretrial incarceration. Nevertheless, we cannot ignore the effect on a person's lifestyle and freedom of movement from having a bracelet permanently affixed to the leg for nine months while being subject to continuous monitoring. The program's expense is a relevant factor as well. By the time his speedy trial motion was filed, Zimmerman had incurred over $2,000 in costs for the monitoring and would be incurring several hundred dollars more before his trial date. We conclude that SCRAM monitoring and its cost, while not oppressive like incarceration, nevertheless constituted an impairment of Zimmerman's liberty that supports his claim of prejudice.

### ii. Minimize the Accused's Anxiety and Concern

¶32 Arrest is a public act that may disrupt the accused's employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety and concern. *Ariegwe*, ¶¶ 96, 147. Even if the accused is not incarcerated pending trial, "'he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.'" *Ariegwe*, ¶ 96 (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193). A certain amount of anxiety and concern is inherent in being accused of a crime. Also, the speedy trial guarantee is designed to shorten the disruption to the accused's life, not to eliminate it altogether. Accordingly, the critical

15

question is whether the delay in bringing the accused to trial *unduly prolonged* the disruption of his life or *aggravated* the anxiety and concern that are inherent in being accused of a crime. *Couture*, ¶ 64; *Ariegwe*, ¶ 97.

¶33 Zimmerman testified at the evidentiary hearing that he had suffered depression, stress, financial burdens, and disruptions to his life as a result of the delay. These matters are set forth more particularly above. *Supra*, ¶ 8. The District Court did not give any weight to these considerations, however, reasoning that Zimmerman had "failed to demonstrate a connection between those conditions and the delay itself—the conditions would all ostensibly attach to a fourth offense felony DUI, whether it was tried in 290 days or 90 days." The court stated that it was "unable to pinpoint any issues directly attributable to the delay that Zimmerman would not have incurred if the trial had been conducted within the period of time prior to the speedy trial triggering date."

¶34 We conclude that the District Court erred by requiring Zimmerman to prove anxiety or concern tied exclusively to the delay exceeding the 200-day trigger date. The question is not whether Zimmerman's conditions arose specifically from the 89-day delay extending beyond the trigger date. It is whether the entire 289-day delay in bringing him to trial *unduly prolonged* the disruption of his life or *aggravated* his anxiety and concern. *Ariegwe*, ¶ 97. The record reflects that the pretrial delay aggravated Zimmerman's mental health issues and financial burdens. There is a clear causal connection between the State's failure to diligently prosecute the charges and Zimmerman's worsening financial situation, aggravated mental health issues, and increased stress in his family relationships. This strongly supports Zimmerman's claim of prejudice.

16

### iii. Limit the Possibility that the Defense Will Be Impaired

¶35     Under the third interest, we consider issues of evidence, witness reliability, and the accused's ability to present an effective defense. *Ariegwe*, ¶ 98. This is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Ariegwe*, ¶ 99. We "'generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Ariegwe*, ¶ 51 (quoting *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693). Thus, the accused's failure to make an affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence does not preclude a finding that the defense has been impaired. *Ariegwe*, ¶ 99; *Billman*, ¶ 47.

¶36     Impairment of the defense due to pretrial delay constitutes the most important factor in the prejudice analysis. *State v. Steigelman*, 2013 MT 153, ¶ 29, 370 Mont. 352, 302 P.3d 396 (citing *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692 ("the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence" is "the most serious" form of prejudice "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system" (brackets and internal quotation marks omitted))). In the absence of affirmative proof of impairment, impairment must be assessed based on the other factors in the speedy trial analysis. *See Ariegwe*, ¶ 100; *State v. Sartain*, 2010 MT 213, ¶ 25, 357 Mont. 483, 241 P.3d 1032. A speedy trial claim likely would fail "if the government had pursued the accused with reasonable diligence and the accused could not show specific prejudice to his or her

defense as a result of the delay." *Ariegwe*, ¶ 60 (citing *Doggett*, 505 U.S. at 656, 112 S. Ct. at 2693). Conversely, where the government has been negligent in bringing the accused to trial, such negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. at 657, 112 S. Ct. at 2693.

¶37 The District Court found Zimmerman's claims regarding an impaired defense to be without merit. On appeal, Zimmerman contends that his and Officer Harrington's memories have faded; however, the District Court noted that their ability to recall the events underlying the charges, while perhaps dimmed a bit by time, are easily reconstructed by means of the videos taken at the scene of the stop and at the detention center. Although the audio portion of these recordings is difficult to hear at times, the majority is audible. Furthermore, Zimmerman has not identified any lost evidence or witnesses; rather, the bulk of his argument is directed at the issue of whether Harrington had particularized suspicion to make the stop—an issue that Zimmerman raised through a motion to suppress, that the District Court resolved against him, and that he has not appealed. We do not find error in the District Court's determination on impairment.

### Balancing

¶38 We last determine whether the accused was deprived of his right to a speedy trial in light of the facts of the case and the weight assigned to each of the factors addressed above. *Morrisey*, ¶ 73. Here, the pretrial delay under Factor One was relatively short: 89 days beyond the 200-day trigger date. We draw no conclusions under Factor Three, in light of the record before us, regarding whether Zimmerman actually wanted a speedy

18

trial. And under Factor Four, Zimmerman did not make an affirmative showing that the delay had impaired his defense. These factors are counterbalanced, however, by several considerations which, together, lead us to conclude that his right to a speedy trial was violated. In particular, none of the delay is attributable to Zimmerman. Furthermore, prosecutors and courts have an affirmative constitutional obligation to ensure that cases are brought to trial in a timely manner, yet almost two-thirds of the pretrial delay here was due to the State's lack of diligence in prosecuting the case. The charges (DUI and no liability insurance) were relatively simple, ordinary driving offenses for which the tolerable delay is low. Finally, Zimmerman presented evidence of impairment to his liberty (in the form of SCRAM monitoring and reporting) and evidence of financial burdens, mental health issues, and stress in family and employment matters, all of which were unduly prolonged by the State's delay in prosecuting the charges. We therefore hold that Zimmerman's right to speedy trial was violated.

## CONCLUSION

¶39 The District Court's order denying Zimmerman's motion to dismiss is reversed, the District Court's July 1, 2013 Judgment and Commitment is vacated, and this case is remanded with instructions to dismiss the charges with prejudice. *State v. Fife*, 193 Mont. 486, 492, 632 P.2d 712, 716 (1981) (the proper remedy for deprivation of the right to a speedy trial is dismissal with prejudice); *Barker*, 407 U.S. at 522, 92 S. Ct. at 2188.

¶40 Reversed.

/S/ LAURIE McKINNON

19

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER