FILED

07/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0044

DA 16-0044

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 179N

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

JOHN ROBERT SPRINGER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 14-0081
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Ashley Harada, Harada Law Firm, PLLC, Billings, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

            Scott Twito, Yellowstone County Attorney, Julie Patten, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  June 14, 2017

Decided:  July 18, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      John Springer appeals the Thirteenth Judicial District Court's denial of his motion to dismiss charges relating to his arrest for driving under the influence (DUI).  He asserts that the proceedings violated his constitutional right to a speedy trial.  We affirm.

¶3      Springer was arrested on January 20, 2014, and subsequently charged with felony DUI and other related offenses.  The District Court set trial for May 6, 2014.  Springer was appointed new counsel, who filed a motion to reset trial.  The court rescheduled trial for September 10, 2014.

¶4      Springer posted bond on July 10, 2014.  The terms of his release mandated that he comply with the "24/7" sobriety program.  Eight days later, on July 18, Springer failed his breath test—in violation of the program—and was placed under arrest.

¶5      The District Court rescheduled trial *sua sponte* from September 10, 2014, to November 24, 2014.  After that trial date passed with no resolution, the court rescheduled trial again for February 24, 2015.  The State filed an amended information in January 2015.

¶6      On February 19, 2015, Springer was released from jail on his own recognizance. The next day, he filed a motion to continue trial because counsel could no longer

represent him due to a conflict. The court granted the motion and rescheduled trial for June 24, 2015. Springer violated the terms of his release again on April 9, 2015, and returned to jail.

¶7 Springer filed a motion to dismiss on May 29, 2015, arguing that his right to a speedy trial had been violated. Because Springer filed his motion so close to the June 24 trial date, the court reset trial for August 11, 2015. The District Court denied Springer's motion to dismiss. It concluded that the State met its burden of showing that Springer had not been denied his right to a speedy trial. The court found that Springer had caused much of the delay through his motions to continue, and that the portion of the delay attributable to the State was merely institutional delay. The court concluded further that the delay did not prejudice Springer.

¶8 On August 7, 2015—four days before trial—Springer pleaded guilty to felony DUI. He reserved his right to appeal the court's denial of his motion to dismiss for speedy trial violations. The length of the delay between the time of Springer's arrest and his guilty plea was 564 days. Of those 564 days, Springer spent approximately 509 days in jail.

¶9 A speedy trial violation presents a question of constitutional law that we review de novo to determine whether the court correctly interpreted and applied the law. *State v. Velasquez*, 2016 MT 216, ¶ 6, 384 Mont. 447, 377 P.3d 1235. We review a district court's underlying factual findings for clear error. *Velasquez*, ¶ 6.

¶10 "A criminal defendant has a constitutional right to speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of

the Montana Constitution." *Velasquez*, ¶ 8. In determining whether a pretrial delay violates a defendant's right to a speedy trial, we consider the following factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused as a result of the delay. *Velasquez*, ¶ 8; *State v. Zimmerman*, 2014 MT 173, ¶ 12, 375 Mont. 374, 328 P.3d 1132. "No one factor is dispositive by itself; the factors are related and must be considered together with such other circumstances as may be relevant. Each factor's significance will vary from case to case." *Zimmerman*, ¶ 12 (citing *State v. Ariegwe*, 2007 MT 204, ¶¶ 105, 112, 338 Mont. 442, 167 P.3d 815).

¶11 Springer argues on appeal that the length of the pre-trial delay was significant, that the delay was attributable primarily to the State, that he invoked his right to a speedy trial as soon as the issue became apparent to him, and that the delay significantly prejudiced him.

¶12 Under the first factor, any delay over 200 days triggers the speedy trial analysis and creates a stronger presumption of prejudice to the accused. *Velasquez*, ¶ 9. Springer's 564-day pretrial delay is more than sufficient to trigger the speedy trial analysis, and it strengthens the presumption of prejudice to Springer.

¶13 As to the second factor, we "identify each period of the delay, attribute the delay to the responsible party, and then assign weight to each period based on the specific cause and motive for the delay." *Velasquez*, ¶ 13 (citation and internal quotations omitted). "[A]ny delay not shown to have been caused by the accused or affirmatively waived by the accused is attributed to the State." *Zimmerman*, ¶ 15. "Institutional delay is

4

attributable to the State, but weighs less heavily against it than delay caused by bad faith, negligence, or lack of diligence." *Velasquez*, ¶ 13 (citation and internal quotations omitted).

¶14    The record shows that Springer was responsible for most of the delay. Springer's two motions to continue caused the court to delay trial from May 6, 2014, to September 10, 2014—a period of 127 days—and then again from February 24, 2015, to June 24, 2015—a period of 120 days. Springer's motion to dismiss caused the court to reset trial from June 24, 2015, resulting in an additional 44-day delay until Springer's guilty plea on August 7, 2015. Springer is accountable for 291 days of the delay, with the remaining 273 attributable to the State. The record supports the District Court's conclusion that the portion of the delay attributable to the State was institutional delay. The second factor of the speedy trial analysis—"the reasons for the delay"—thus weighs in the State's favor. *See Velasquez*, ¶ 8.

¶15    Under the third factor, we examine the "totality of the accused's responses to the delay" to determine "whether he actually wanted a speedy trial." *Zimmerman*, ¶ 22. "A court may not infer that the accused did not want a speedy trial *solely* because he or she did not object to pretrial delay often or at all." *Zimmerman*, ¶ 24 (citation and internal quotations omitted). Springer did not assert his right to a speedy trial until May 29, 2015—more than one year and four months after his arrest. This fact, standing alone, does not prove that Springer did not want a speedy trial. *See Zimmerman*, ¶ 24. Yet the "totality of [Springer's] responses to the delay"—including his and his counsel's actions

5

that caused much of the delay and his failure to object to the delay for so long—does not weigh in his favor. *See Zimmerman*, ¶ 22.

¶16 Finally, in examining the fourth factor,

> we consider whether the delay prejudiced the accused in light of the interests that the speedy trial right was designed to protect: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern caused by the presence of unresolved criminal charges, and (iii) limiting the possibility that the accused's ability to present an effective defense will be impaired.

*Velasquez*, ¶ 27.

¶17 Springer presented evidence that the delay and his incarceration significantly prejudiced him, such as by causing him financial hardship from missing work and by causing him to miss his daughter's eighteenth birthday and high school graduation. The record shows, however, that Springer's violations of the terms of his release led to the majority of his incarceration. Eight days after Springer's July 2014 release from jail, he violated the terms of his release. As a result, he was incarcerated from July 18, 2014, to February 19, 2015—a period of 216 days. Springer violated the terms of his release again in April 2015, leading to his incarceration from April 9, 2015, to August 7, 2015—a period of 120 days. Springer's own actions thus resulted in 336 of his approximately 509 days of incarceration.

¶18 There was substantial evidence to support the finding that the conditions of Springer's pretrial incarceration were not "oppressive." *See Velasquez*, ¶ 27. Any "anxiety and concern" that Springer experienced due to the pending criminal charges was largely "brought on by Mr. Springer's own actions," as the District Court found. *See*

6

*Velasquez*, ¶ 27. Finally, "[i]mpairment of the defense constitutes the most important interest in the prejudice analysis." *Velasquez*, ¶ 45 (citation and internal quotations omitted). Springer presented no evidence that the delay impaired his "ability to present an effective defense." *See Velasquez*, ¶ 27.

¶19 We conclude that the District Court's findings of fact were not clearly erroneous. *See Velasquez*, ¶ 6. In balancing the factors of the speedy trial analysis, we agree with the court's conclusion that the proceedings did not violate Springer's right to a speedy trial.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable memorandum opinions. This appeal presents no issues of first impression and does not establish new precedent or modify existing precedent. The District Court's denial of Springer's motion to dismiss is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE