Justice Beth Baker delivered the Opinion of the Court.
***83 ¶1 David Kurtz appeals the Thirteenth Judicial District Court's order denying his motion *482 to dismiss for violation of his right to a speedy trial. Kurtz argues that applying this Court's established speedy trial standards, the 422-day delay in resolving his felony driving under the influence charge violated his constitutional rights. We reverse and remand for dismissal of Kurtz's charge.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 A Montana Highway Patrol trooper arrested Kurtz in Yellowstone County on May 3, 2015, and the State charged him with felony driving under the influence of alcohol and misdemeanor driving while license suspended. Kurtz pleaded not guilty. The District Court set bond at $ 20,000, which Kurtz was unable to post. The District Court initially scheduled trial for August 17, 2015. Kurtz filed a motion to suppress on July 22, 2015, contesting the legality of the traffic stop. One week later, the State moved to postpone the trial because the results from the crime lab had not yet been received. Kurtz did not oppose this motion; he agreed the trial should be postponed pending the toxicology results. The court vacated the August trial date and set the trial for September 21, 2015.
¶3 The District Court held a hearing on Kurtz's motion to suppress on August 31, 2015, and denied the motion in late November. On December 14, 2015, the court reset the trial for January 4, 2016, noting that the September trial date had "passed with no resolution." Four days later, Kurtz's counsel e-mailed the District Court's judicial assistant requesting the court "not call a jury for January 4, 2016." The judicial assistant replied that if there is not going to be a trial, Kurtz would have to file a motion to continue with a waiver.
¶4 On December 21, 2015, Kurtz filed a status report requesting that the District Court vacate the January 4 trial and set a change of plea hearing. No hearing was set. The January trial date passed. On April 12, 2016, the State requested the court to reset the trial. The following day, the court set a new trial date for May 23, 2016. Kurtz filed a motion to dismiss on May 11, 2016, alleging that his right to a speedy trial was violated. The May trial date passed. The District Court held a hearing on Kurtz's motion to dismiss on June 1, 2016, and denied it three weeks later. The court found that the length of delay and reasons for the delay weighed in favor of finding a speedy trial violation but concluded that Kurtz's response to the delay and the prejudice to Kurtz did not weigh in Kurtz's favor. The court determined that, on balance and because Kurtz's defense was not impaired, Kurtz was not denied a speedy trial.
***84 ¶5 Kurtz entered a change of plea with the District Court four days later. Kurtz pleaded guilty to felony driving under the influence of alcohol and waived his right to a presentence investigation. On the State's motion, the court dismissed the misdemeanor charge. It sentenced Kurtz to the maximum, thirteen-month commitment with the Department of Corrections, followed by a five-year suspended sentence. Because Kurtz's pretrial incarceration was twenty-six days longer than his thirteen-month sentence of imprisonment, Kurtz was released immediately and awarded a $ 2,470 credit against the $ 5,000 fine imposed.
STANDARDS OF REVIEW
¶6 On appeal of a speedy trial ruling, we review a district court's factual findings for clear error. State v. Ariegwe , 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. The trial court's findings are "clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made." Ariegwe , ¶ 119. Whether the factual circumstances establish a speedy trial violation is a question of constitutional law that we review de novo. Ariegwe , ¶ 119.
DISCUSSION
¶7 The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution both guarantee a criminal defendant the right to a speedy trial. If the delay between accusation and trial exceeds 200 days, this Court must examine speedy trial violations under the *483 Ariegwe four-factor test. Ariegwe , ¶ 41. The test balances: (1) the length of delay; (2) the reasons for the delay; (3) the accused's response to the delay; and (4) the prejudice to the accused. Ariegwe , ¶ 34. "No one factor is dispositive by itself; rather, the factors are related and must be considered together with such other circumstances as may be relevant." Ariegwe, ¶ 112.
Factor One: The Length of the Delay
¶8 Kurtz pleaded guilty to felony DUI 422 days after he was arrested and charged, a delay that triggers our four-factor balancing test. Ariegwe , ¶ 107. The presumption of prejudice intensifies, and the State's burden to justify the delay increases, as the delay stretches beyond the 200-day threshold. Ariegwe , ¶ 62.
¶9 The 422-day delay in this case substantially increases the State's burden under Factor Two and Factor Four. The State must provide ***85 "particularly compelling justifications" for the delay under Factor Two. Ariegwe , ¶ 123. Further, the State must make a more persuasive showing that Kurtz was not prejudiced by the delay, while the quantum of proof that may be expected of Kurtz to demonstrate prejudice is correspondingly lower. Ariegwe , ¶ 123 ; accord State v. Rose , 2009 MT 4, ¶ 46, 348 Mont. 291, 202 P.3d 749 (holding that a 507-day delay "substantially" increased the State's burden under Factor Two, the presumption that pretrial delay prejudiced Rose is increased, and the quantum of proof expected of Rose under Factor Four is substantially decreased).
Factor Two: The Reasons for the Delay
¶10 Kurtz challenges the weight given to two periods of delay: (1) the sixty-four-day delay between the September trial date and the date the District Court denied Kurtz's suppression motion; and (2) the ninety-nine-day delay between the January 1, 2016 trial date and the date the State asked to reset the trial. The parties do not contest the District Court's analysis of the other periods of delay.
¶11 "[T]he prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner[,] and ... this duty requires a good faith, diligent effort to bring him to trial quickly." Ariegwe , ¶ 65 (internal citations and quotations omitted). The State therefore bears the burden of explaining the pretrial delays. Ariegwe , ¶ 64. Delay is charged to the State unless the accused caused the delay or affirmatively waived his speedy trial right for that period. State v. Billman , 2008 MT 326, ¶ 20, 346 Mont. 118, 194 P.3d 58.
¶12 Under Factor Two, we assign weight to each period of delay based on the specific cause of the delay. State v. Zimmerman , 2014 MT 173, ¶ 19, 375 Mont. 374, 328 P.3d 1132. The weight assigned will depend on the party's culpability in causing the delay. Ariegwe , ¶ 67. The prosecution's negligence or lack of diligence is weighed against the State less heavily than is bad faith, but "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Ariegwe , ¶ 69. Institutional delays-"those that are caused by overcrowded court dockets and other similar events"-are attributable to the State but weigh even less heavily. Adams v. State , 2007 MT 35, ¶ 31, 336 Mont. 63, 153 P.3d 601 (citing State v. Small , 279 Mont. 113, 118-19, 926 P.2d 1376, 1379 (1996) ).
Sixty-Four-Day Delay from September 21 to November 24, 2015
¶13 The September 21 trial setting passed without being vacated or continued. On November 24, the court issued findings of fact and ***86 conclusions of law denying Kurtz's motion to suppress. The District Court concluded that the period of delay between September 21 and November 24, 2015, was attributable to all parties and deemed institutional. The District Court explained that the delay was due to: (1) the court's consideration of Kurtz's suppression motion; (2) the delay in ruling on the suppression motion pending Kurtz's response to the court's disclosure of a potential conflict of interest; and (3) the presiding judge attending a training seminar. The court reasoned that the delay was attributable in part to Kurtz because he filed the motion to suppress, *484 and a delay caused by defense motions is typically attributable to the defendant. The District Court concluded that the delay also was attributable to the State because the court could have followed up with Kurtz or set a status hearing sooner, and the State could have sought a status hearing.
¶14 Six days before the September trial setting, the District Court contacted counsel for both parties to arrange a conference call. Kurtz's counsel responded the same day and scheduled the call for the next day. The judge revealed a potential conflict of interest arising from his appearance, while a deputy county attorney, in a proceeding involving one of Kurtz's prior DUI charges. Both defense counsel and the court would recall at the suppression hearing that counsel advised the court she did not believe there would be a problem and that the court asked her to discuss it with Kurtz and advise the court "if there's any issues." Because Kurtz had no concerns, counsel did not report back.
¶15 Kurtz argues that the sixty-four-day delay was attributable solely to the State's lack of diligence because the State failed to set Kurtz's case for trial. Kurtz maintains he should not be charged with delay for not following up with the court based on the court's instruction to bring it back only if Kurtz took issue with the possible conflict. The State argues that Kurtz's failure to follow up with the court delayed the court's ruling on the suppression motion.
¶16 A defendant will be charged with delay caused by his or her pretrial motions. See, e.g., Adams , ¶ 32 (holding that delay caused by defense counsel's motion to withdraw as counsel is attributable to the defense); State v. Collier , 277 Mont. 46, 55, 919 P.2d 376, 382 (1996) (holding that delay caused by a motion to vacate and reset the trial date to allow defense counsel additional time to prepare a defense is attributable to the defendant).
¶17 Unlike Adams and Collier , Kurtz's motion to suppress did not seek to continue the trial or cause a resulting delay. Kurtz's motion, filed two months before the September trial date, sought suppression of all evidence collected after the Highway Patrol trooper activated his ***87 emergency lights. Kurtz's failure to follow up with the District Court regarding the potential conflict of interest does not support a finding that Kurtz is to blame for the delay; the District Court told Kurtz to follow up only if there was a problem. With the trial just six days later, Kurtz reasonably assumed the court would proceed if he expressed no concern.
¶18 The sixty-four-day delay was at least partly institutional because of the court's training schedule. But the State points to nothing else in the record to support a finding that this delay is "inherent to the criminal justice system and caused by circumstances largely beyond the control of the prosecutor and the accused." Ariegwe , ¶ 68. The presiding judge attended training during the latter half of October and returned on November 2, 2015. By then the trial setting had passed with no resolution. The delay continued twenty-two days after the judge's return with no attempt by the State to timely move the case forward. The sixty-four-day delay therefore weighs more heavily against the State than institutional delay.
Ninety-Nine-Day Delay between January 4 and April 12, 2016
¶19 The District Court concluded that the delay between the January trial date and April 12, when the State asked to reset the trial, was attributable to all parties as institutional delay because: (1) although Kurtz asked the court to set a change of plea hearing, he did not otherwise pursue the change of plea or the setting of the hearing; (2) the District Court did not notice Kurtz's change of plea request in Kurtz's status report; and (3) the State did not actively prosecute Kurtz.
¶20 Kurtz maintains that the ninety-nine-day delay was attributable to the State because, after he requested the District Court to set a change of plea hearing, it was the State's burden to ensure a hearing was set for disposition of the case. The State argues that "Kurtz bears some responsibility for representing to the court that a plea deal had been reached but not entering a plea." The State maintains that this case is factually similar to *485 State v. Stewart , 2017 MT 32, 386 Mont. 315, 389 P.3d 1009, in which this Court concluded that a defendant and the State bore shared responsibility for the delay.
¶21 In Stewart , both Stewart and the State filed status reports asking that the District Court "not assemble a jury." Stewart , ¶ 12. Stewart's report further advised the District Court that "a change of plea has occurred or is scheduled." Stewart , ¶ 12. Stewart was incarcerated in another county on other charges, and both parties were working together to arrange Stewart's appearance by video to change his plea, but those efforts failed. Stewart , ¶ 12. As a result, the trial date passed ***88 with no resolution. Stewart , ¶ 12. On appeal, Stewart argued that the State should be apportioned the delay because the State bore the responsibility to bring him to trial. Stewart , ¶ 12. We disagreed and found that Stewart bore "primary responsibility" for the delay, reasoning that Stewart did not enter a plea, as he claimed he intended, but instead moved to substitute the judge and filed complaints against his attorney, which caused delays. Stewart , ¶ 13.
¶22 Here, once Kurtz filed his December 21, 2015 motion to vacate the January trial date and set a change of plea hearing, it was the State's responsibility to schedule that hearing. Unlike Stewart , Kurtz did not engage in any tactics to further the delay. At the speedy trial hearing, he told the judge that he was "just waiting for things to happen." "[O]ngoing negotiations, whether they be for deferred prosecution or a plea bargain," do not relieve the prosecution of its duty to bring defendants to trial in a timely fashion. Small , 279 Mont. at 118, 926 P.2d at 1379. Kurtz did not cause the delay when he asked for a change of plea hearing to be set and the court failed to schedule one. The delay therefore is not attributable to Kurtz.
¶23 The District Court erred in finding that the ninety-nine-day delay was institutional. There is no evidence that the State acted in bad faith or made a deliberate attempt to hamper Kurtz's defense. The State lacked diligence, however, for "inadvertently failing to request the [trial court to] reset this matter for trial." The prosecutor admitted that the State's request for the trial to be reset "basically fell off [his] tickler, [his] radar." The District Court agreed that it was error to fail to set a change of plea hearing. This delay weighs more heavily than institutional delay.
¶24 The sixty-four-day delay and the ninety-nine-day delay were not institutional and not attributable to Kurtz. These 163 days of delay due to the State's lack of diligence weigh against the State. Relying on the District Court's determinations for the rest of the delay, we calculate 35 days of valid delay, 168 days of institutional delay, 183 days of delay based on the State's lack of diligence (including 20 days the District Court attributed that are not at issue on appeal), 32 days attributable to the defendant, and 4 days from the speedy trial ruling to the date Kurtz changed his plea. Without the delays caused by the prosecution's lack of diligence, Kurtz's pretrial delay would barely exceed the 200-day threshold. The State did not meet its burden to show a "particularly compelling justification" for the added pretrial delay. See Ariegwe , ¶ 123. Factor Two therefore weighs in Kurtz's favor.
Factor Three: The Accused's Responses to the Delay
¶25 The District Court concluded that Kurtz did not want a speedy ***89 trial: (1) Kurtz stated that he did not want a trial; (2) Kurtz represented to the court that the case would resolve without trial and that the parties reached a plea agreement; (3) Kurtz indicated a willingness to waive speedy trial; and (4) Kurtz waited until twelve days before the fourth set trial date to file his speedy trial motion. The District Court discounted Kurtz's request for a change of plea hearing, reasoning: "Changing one's plea is incompatible with a speedy trial because part of the colloquy that is a prerequisite threshold to the Court accepting a guilty plea involves informing the defendant he is waiving his right to a trial and what the trial involves."
¶26 Kurtz points out that a defendant does not abandon his right to a speedy trial when he engages in plea negotiations. See Small , 279 Mont. at 118, 926 P.2d at 1379. Kurtz argues that he was not required *486 repeatedly to ask that the case proceed. The State maintains that Kurtz's conduct demonstrated his desire to avoid trial when he did not complain about the delay. The State argues that Kurtz's status report requesting that the court "not call a jury for January 4, 2016," and his intention to plead guilty support the finding that Kurtz did not desire a speedy trial.
¶27 Under the third factor, the court evaluates the defendant's acquiescence in or objections to pretrial delays in light of the circumstances. Ariegwe , ¶ 110. The court must evaluate the totality of circumstances to determine whether the defendant actually wanted a speedy trial, "which in turn informs the inquiry into whether there has been a deprivation of the right." Ariegwe , ¶ 110. "The timing and number of instances in which the accused objects to pretrial delay are not talismanic." Ariegwe , ¶ 80. Assertion of the speedy trial right must be viewed in the light of the accused's other conduct. Ariegwe , ¶ 80.
¶28 We rejected the argument in Small that the defendant's continued participation in plea negotiations created "the impression that there would be no trial and thus no speedy trial problem." Small , 279 Mont. at 118, 926 P.2d at 1379. We conclude likewise here that Kurtz's involvement in plea negotiations is not incompatible with his desire for a speedy trial and does not weigh against him in the analysis.
¶29 We also reject the State's argument that Kurtz failed to demonstrate desire for a speedy trial when he made no attempt pursue a change of plea hearing. Kurtz affirmatively sought resolution of the case through a change of plea hearing. It was the State's burden to move forward with either a trial or a change of plea. The District Court should have weighed Factor Three in favor of Kurtz.
***90 Factor Four: Prejudice to the Accused
¶30 The District Court concluded that the delay did not prejudice Kurtz because Kurtz did not show any impact on witness availability or his ability to raise a specific defense. The District Court also reasoned that Kurtz's counsel acknowledged he was not claiming impairment of the defense, "the most serious interest protected by the speedy trial right."
¶31 The court assesses prejudice in the light of the interests that the speedy trial right was designed to protect: "(i) preventing oppressive pretrial incarceration; (ii) minimizing anxiety and concern caused by the presence of unresolved criminal charges, and (iii) limiting the possibility that the accused's ability to present an effective defense will be impaired." Ariegwe , ¶ 111.
¶32 "The first interest-preventing oppressive pretrial incarceration-reflects the 'core concern' of the speedy trial guarantee: 'impairment of liberty.' " Ariegwe , ¶ 89 (quoting United States v. Loud Hawk , 474 U.S. 302, 312, 106 S. Ct. 648, 654, 88 L.Ed.2d 640 (1986) ). The longer the period of pretrial incarceration, the more likely it has been oppressive and the more likely the defendant has been prejudiced by the delay. Ariegwe , ¶ 90. When considering whether pretrial incarceration was oppressive, we consider duration of the incarceration, complexity of the charged offense, any misconduct by the accused directly related to the pretrial incarceration, and conditions of the incarceration. Ariegwe , ¶ 113.
¶33 Kurtz was incarcerated more than three weeks longer than the maximum period of confinement to which he could have been sentenced for felony DUI. In support of its finding that Kurtz's fourteen-month incarceration did not show prejudice, the District Court relied on State v. Hodge , 2014 MT 308, ¶¶ 23, 25, 377 Mont. 123, 339 P.3d 8, stating, "918 days' pretrial incarceration does not by itself show prejudice." The accused in Hodge , however, was incarcerated for almost none of the 918-day delay, much of which was attributed to Hodge's decision to abscond for approximately two years. Hodge , ¶¶ 8, 25. The District Court's reliance on Hodge for the notion that the duration of Kurtz's pretrial incarceration was insufficient to show oppression and commensurate prejudice is therefore misplaced.
¶34 Kurtz's lengthy incarceration-alone an indication of oppressiveness (e.g. , State v. Blair , 2004 MT 356, ¶ 28, 324 Mont. 444, 103 P.3d 538 )-is especially egregious because he *487 was incarcerated for a period that exceeded the maximum sentence of confinement for his charged offense. Further, absent other factors not present here, DUI ***91 offenses are relatively simple, ordinary driving offenses for which the tolerable delay is relatively low. See, e.g. , Zimmerman , ¶ 21 ; Billman , ¶ 40.
¶35 We also consider the conditions of confinement. The "seriousness of a deprivation of liberty due to pretrial incarceration will vary with the conditions of the defendant's confinement." Ariegwe , ¶ 93 (internal citation omitted). The question is one of oppressiveness, not merely occasional unpleasantness or disagreeable conditions. Ariegwe , ¶ 93.
¶36 Unable to post the $ 20,000 bond, Kurtz remained incarcerated from the time of his arrest until the day he changed his plea. At the time of hearing on his motion to dismiss, Kurtz was housed with seventy-five other men in a jail unit built to house sixty. The evidence showed that Kurtz did not receive his prescribed sleep aid medication for the first five to six months he was in jail. Kurtz also was denied his mental health medication for approximately the first four months he was incarcerated. When he finally received his anti-depression medication, it was at a dose significantly lower than what he had been prescribed-two milligrams instead of forty milligrams. Kurtz testified that the change in dosage made his medication ineffective, and his mental health condition worsened. Further, prior to his incarceration, Kurtz had issues with his back, including bone spurs, degenerative disc disease, and missing cushion between some vertebrae. Kurtz was going to physical therapy for his back and taking prescribed pain medication three times a day. Kurtz's doctor recommended that Kurtz not lift anything or "pretty much [ ] do anything." Kurtz was not allowed to resume taking his prescribed pain medication in the jail, and he could not afford the over-the-counter medication the jail offered. Kurtz was denied a medical mattress each of the twenty times he requested it either verbally or in writing. Kurtz was required to push a dust mop around his jail unit, which aggravated his pain. As noted, Kurtz's pretrial incarceration surpassed the maximum prison sentence he could receive; that prevented him from participating in or completing a residential alcohol treatment program-the primary purpose of such a sentence. See § 61-8-731(1)(a), MCA. Kurtz's lack of prescribed medical treatment, along with the fact he was incarcerated for longer than the maximum sentence allowed, supports the conclusion that his incarceration was oppressive.
¶37 The second interest requires inquiry whether the delay has unduly prolonged the disruption of the defendant's life or aggravated the anxiety and concern inherent with being accused of a crime.
***92 Ariegwe , ¶ 111. Aggravated mental health problems and the accused's deteriorating financial situation are relevant. See, e.g. , Zimmerman , ¶ 32 (holding that "the critical question is whether the delay in bringing the accused to trial unduly prolonged the disruption in his life or aggravated the anxiety and concern that are inherent in being accused of a crime" (emphasis in original)); Billman , ¶¶ 43-45 (holding that pretrial incarceration unduly prolonged the disruption to Billman's life when he lost his employment, began taking antidepressants and anti-anxiety medication as a result of his incarceration, and was no longer allowed to see his children).
¶38 The State argues that Kurtz's depression existed before his incarceration, and there is no evidence that the pretrial delay unduly prolonged the disruption to Kurtz's life or aggravated Kurtz's anxiety and concern. The State maintains that Kurtz was provided his antidepressants within the 200-day threshold, and therefore the lack of medication should not factor into the analysis. Kurtz testified that after he was incarcerated, his anxiety levels were "through the roof," and continued incarceration made his depression "way worse" and caused him to "feel really worthless." Kurtz's testimony indicates that his aggravated anxiety was from the length of his incarceration and not from the charges brought against him. When asked if he had anything to add about being incarcerated, Kurtz replied, "I wish they could give me more help with my mental issues, which has been denied all the way through." Although Kurtz was allowed to resume *488 taking his prescribed antidepressants within about four months of his incarceration, it was reduced-without an apparent explanation-for the duration of his pretrial incarceration to a level that rendered it ineffective.
¶39 Beyond Kurtz's prolonged mental health problems, Kurtz lost his home while incarcerated. A few months after his arrest, Kurtz's landlord visited him at the jail and told him that his mobile home would be sold for scrap if he was unable to pay rent. Kurtz asked his landlord to wait until he got out or allow him time to arrange something else. His landlord refused, however, and sold his trailer for scrap with no formal eviction proceedings.
¶40 Although the State contends that Kurtz lost his home prior to the 200-day threshold, the State has not made a "highly persuasive showing" that Kurtz's anxiety and concerns were not unduly prolonged, as is required with this length of delay. This factor weighs in favor of finding prejudice.
¶41 Finally, Kurtz does not claim impairment of his defense. We assess prejudice under Factor Four in light of all of the interests the ***93 speedy trial right was designed to protect. State v. Velasquez , 2016 MT 216, ¶ 27, 384 Mont. 447, 377 P.3d 1235. Kurtz's interests in preventing oppressive pretrial incarceration and minimizing his anxiety and concern were prejudiced by the delay.
Balancing
¶42 Balancing the four Ariegwe factors, we disagree with the District Court's conclusion that Kurtz's constitutional right to speedy trial was not violated. At bottom, Kurtz fell through the cracks in Montana's overworked Thirteenth Judicial District. With little notice, Kurtz spent every day of the 422-day delay in pretrial incarceration, confined in an overcrowded unit longer than the maximum sentence his charged crime allowed. He did not receive his prescribed medication, his mental and physical health deteriorated, and he lost his home. These consequences ill-serve the objective in a felony DUI case that a repeat offender meaningfully address his substance addiction.
¶43 Our standards requiring the State to provide "particularly compelling justifications" for such a lengthy pretrial delay and a "highly persuasive showing" that the delay did not prejudice the defendant are not theoretical objectives. The State failed to demonstrate either. Balancing the four Ariegwe factors in light of surrounding circumstances, Ariegwe , ¶ 113, we conclude that Kurtz's right to a speedy trial was violated.
CONCLUSION
¶44 We reverse the District Court's denial of Kurtz's motion to dismiss. The case is remanded with instructions to dismiss the charge.
We Concur:
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.