FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0665

DA 22-0665

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 294N

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

SCOTT ALAN LEHRKAMP,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2021-464
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Tammy Hinderman, Appellate Defender, Deborah S. Smith, Assistant
Appellate Defeder, Helena, Montana

      For Appellee:

           Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

           Rune H. Vander Wey, Agency Legal Services Bureau, Helena, Montana

           Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton, Deputy
County Attorney, Helena, Montana

Submitted on Briefs: November 13, 2024

Decided: December 10, 2024

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Scott Alan Lehrkamp appeals from the First Judicial District Court, Lewis and Clark County's Findings of Fact, Conclusions of Law, and Order denying his motion to dismiss for lack of a speedy trial. We affirm.

¶3 Lehrkamp was arrested on September 25, 2021, for allegedly assaulting his father. The State filed an Information charging Lehrkamp with one count of felony partner or family member assault (PFMA), 3rd or subsequent offense, on October 18, 2021. On October 19, 2021, Lehrkamp was arraigned, and the case was assigned to Judge Menahan. Trial was set for March 21, 2022. On October 28, 2021, the State moved to substitute Judge Menahan. On November 2, 2021, Judge Seeley assumed jurisdiction over the case. On November 3, 2021, Judge Seeley released Lehrkamp on his own recognizance on this charge. Lehrkamp remained incarcerated on a parole hold, and his parole status was revoked on December 21, 2021. Lehrkamp was returned to Montana State Prison (MSP) less than three months after his arrest.

¶4 On December 16, 2021, the District Court held a status hearing and set the matter for trial on May 16, 2022. At the April 28, 2022 final pretrial conference, defense counsel expressed Lehrkamp's preference to proceed to trial on the May 16, 2022 trial date. The

2

District Court noted that two other criminal cases, both of which were older than Lehrkamp's case, were confirmed to be tried on that date. Initially, the District Court offered to take a wait-and-see approach to Lehrkamp's trial in an effort to keep the May 16, 2022 trial date, but ultimately vacated the trial date and reset it for September 12, 2022.[1]

¶5 On June 29, 2022, Lehrkamp filed a Motion to Dismiss for Lack of Speedy Trial. Following an evidentiary hearing on July 26, 2022, the District Court issued Findings of Fact, Conclusions of Law, and Order denying the motion to dismiss. Applying the factors in *State v. Ariegwe*, 2007 MT 204, ¶ 113, 338 Mont. 442, 167 P.3d 815, the District Court found that the length of delay between Lehrkamp's arrest and trial was 352 days, or 152 days beyond the speedy trial trigger of 200 days.[2] The District Court determined that all 352 days were institutional or "good-faith" delay attributable to the State. The District Court concluded Lehrkamp's claim failed because he did not demonstrate sufficient prejudice.

¶6 Pursuant to a plea agreement with the State, on September 8, 2022, Lehrkamp pled guilty to the felony PFMA charge. In return, the State dismissed its request for a persistent felony offender sentence enhancement. The District Court imposed the agreed-upon sentence of two years at MSP, no time suspended, with the sentence to "run concurrently

---

[1] The District Court anticipated that one of the older cases would go to trial on May 16, 2022. One of the older cases did go to trial, which would have resulted in Lehrkamp's trial being vacated in any event.

[2] The actual delay was 349 days because Lehrkamp's guilty plea stopped the speedy trial clock. *Ariegwe,* ¶ 43. The three-day difference is immaterial to our analysis.

and merge with" the sentence Lehrkamp was already serving. Pursuant to the plea agreement, the District Court imposed a $500 fine that was zeroed out by credit for time served. Lehrkamp reserved his right to appeal the denial of his motion to dismiss.

¶7 Factual findings underlying a speedy trial analysis are reviewed for clear error. *Ariegwe,* ¶ 119. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if review of the record convinces us that the district court made a mistake. *Ariegwe*, ¶ 119 (citation omitted). Whether those factual circumstances amount to a speedy trial violation is a question of constitutional law, which we review de novo to determine whether the district court correctly interpreted and applied the law. *State v. Chambers*, 2020 MT 271, ¶ 6, 402 Mont. 25, 474 P.3d 1268 (citations omitted).

¶8 A defendant is guaranteed the right to a speedy trial by the Sixth and Fourteenth Amendments of the United States Constitution and by Article II, Section 24, of the Montana Constitution. *Ariegwe*, ¶ 20. Speedy trial claims are analyzed by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) the prejudice to the accused resulting from the delay. *Ariegwe*, ¶ 113.

¶9 In considering the first factor, length of the delay, prejudice is presumed when the period between accusation, including arrest, and trial exceeds 200 days; the presumption of prejudice, along with the State's burden to justify the delay, increase commensurate with the number of days exceeding that threshold. *Ariegwe*, ¶¶ 42, 62. A guilty plea stops the speedy trial clock. *Ariegwe*, ¶ 43. In this case, the parties agree the length of delay from

4

Lehrkamp's arrest to his guilty plea is 349 days. The State concedes the delay triggers a speedy trial analysis because it exceeds the 200-day threshold by 149 days.[3]

¶10    Lehrkamp argues that while the District Court acknowledged prejudice is presumed once the 200-day triggering date has passed and prejudice intensifies the longer the delay continues, with the State's burden to justify the delay likewise intensifying, the District Court committed clear error by failing to apply those principles to his case. Lehrkamp contends the State should be required to provide a "particularly compelling justification for the delay" and correspondingly lower Lehrkamp's burden to demonstrate prejudice. Toward that end, Lehrkamp cites to three cases in which the total delay ranged from 279 to 422 days.[4]  Of these cases, only the case in which the delay was 422 days did we apply such a standard. There is no mathematical precision for determining the demarcation line that triggers the somewhat amorphous "particularly compelling justification for the delay" standard. But as a general guidepost, we held in *Velasquez* that a 309-day delay "occupie[d] a middle ground" between *Zimmerman* (289-day delay) and *Ariegwe* (408-day delay). *State v. Velasquez*, 2016 MT 216, ¶ 12, 384 Mont. 447, 377 P.3d 1235 (citing *State v. Zimmerman*, 2014 MT 173, ¶ 13, 375 Mont. 374, 328 P.3d 1132; *Ariegwe*, ¶ 122). Applying this general guidepost to the present case, we determine the 349-day delay

---

[3] The State requests that we reconsider the 200-day threshold. Since we have determined that the District Court did not err by denying Lehrkamp's motion under the existing *Ariegwe* analysis, we need not address this issue.

[4] *State v. Mayes*, 2016 MT 305, ¶ 8, 385 Mont. 411, 384 P.3d 102 (279-day delay); *State v. Velasquez*, 2016 MT 216, ¶ 12, 384 Mont. 447, 377 P.3d 1235 (309-day delay); *State v. Kurtz*, 2019 MT 127, ¶ 9, 396 Mont. 80, 443 P.3d 479 (422-day delay).

occupies a similar middle ground.  Accordingly, the State has a higher, but not compelling, burden to provide justifications for the delay and the State "must make a more persuasive showing" that Lehrkamp was not prejudiced, while Lehrkamp's burden to demonstrate prejudice is correspondingly lower.  *Velasquez,* ¶ 12 (citing *Ariegwe*, ¶ 123).

¶11    The second factor, reason for the delay, requires the court to identify each period of delay as attributable either to the defendant or to the State, before weighing each delay based on cause and motive.  *Ariegwe*, ¶¶ 63–66.  Delays not obviously caused or affirmatively waived by the defendant are attributed to the State.  *Ariegwe*, ¶ 108.  Institutional delay—inherent delay resulting from circumstances largely beyond the control of the parties or court—is attributable to the State but weighs less heavily than delays caused by "bad faith, negligence, or lack of diligence."  *Zimmerman*, ¶ 19.  Delay due to overcrowding of court dockets is considered institutional.  *State v. Butterfly*, 2016 MT 195, ¶ 27, 384 Mont. 287, 377 P.3d 1191 (citations omitted).  Lack of diligence in prosecuting and bad-faith delays by the State to frustrate the defense weigh most heavily against the State.  *Ariegwe*, ¶ 109.

¶12    The District Court identified three periods of delay preceding Lehrkamp's September 12, 2022 trial.  Adding up these periods, the District Court determined that all of the delay was attributable to the State, but held that 296 days were institutional delay, while 56 days were "good-faith" delay for a valid reason that did not weigh heavily against the State.

6

¶13 The District Court held the 177-day delay between Lehrkamp's arrest and his original trial date before Judge Menahan was inherent institutional delay due to the court's overcrowded docket. The District Court held that the State's motion to substitute Judge Menahan caused a 56-day delay between the original trial date and the reset trial date of May 16, 2022, before Judge Seeley. The District Court determined this was a "good-faith" delay attributable to the State because the State's substitution motion was brought within the statutory time limit. The District Court held that the 119-day delay between Lehrkamp's May 16, 2022 trial and September 12, 2022 trial was institutional because two older cases took precedence in trial setting and one of those case was actually tried on May 16, 2022, so Lehrkamp's trial would have been vacated in any event.

¶14 Lehrkamp contends the District Court clearly erred when it found the delays were institutional and "good-faith" delays. Lehrkamp argues they should be characterized as lack of diligence, which weighs more heavily against the State. Lehrkamp argues the State primarily lacked diligence when it took three weeks to request leave to file an Information in the District Court after his arrest; when it moved to substitute Judge Menahan at the end of the statutory period for filing such a motion; and when it failed to file an omnibus form for the May 16, 2022 trial. These three decisions, Lehrkamp argues, created a cascading effect that resulted in the assignment to Judge Seeley for trial on May 16, 2022, and the later resetting of the trial for September 12, 2022.

¶15 Regarding the three weeks between Lehrkamp's arrest and requesting leave to file an Information, in *Zimmerman* we held a six-month delay between arrest and the State's

request for leave to file an information on DUI and driving without insurance charges—which comprised nearly two-thirds of the total delay—indicated an obvious lack of diligence on the part of the State. *Zimmerman*, ¶ 21. Lehrkamp has not cited any precedent where we have held that three weeks between arrest and seeking leave to file an Information on a felony charge constituted a lack of diligence, and we are not persuaded that such a delay bears out that argument in this case.

¶16 As for the State's motion to substitute Judge Menahan, we are similarly unconvinced that moving to substitute a judge nine days after Lehrkamp's arraignment—and within the time period for filing such a motion—evinces a lack of diligence. The State timely followed the procedure set forth in § 3-1-804, MCA, and the District Court did not err when it weighed the days attributed to the motion for substitution less heavily than lack of diligence or bad faith. *Butterfly*, ¶ 31 (citing *Zimmerman*, ¶ 19).

¶17 Finally, the failure to file an omnibus form before the first trial setting in front of Judge Seeley did not contribute to the delay in this case. The delay between the May 16, 2022 trial setting and the reset date of September 12, 2022, was necessitated by two older criminal cases that were set for the same date, one of which went to trial on that date. Lehrkamp's case was not going to trial on May 16, 2022, regardless of whether it was ready for trial.

¶18 The District Court did not err in finding that the reason for the delay was largely institutional and did not weigh heavily against the State.

8

¶19    The third factor requires a court to consider the defendant's response to the delay. The District Court found, and the parties agree, that Lehrkamp timely asserted his speedy trial right. The District Court correctly analyzed Lehrkamp's response to the delay.

¶20    The final factor is prejudice to the accused caused by the delay. *Ariegwe*, ¶ 86. This factor considers three forms of prejudice: the degree of oppressive pretrial incarceration, anxiety or disruption caused by unresolved criminal charges, and potential damage to the defendant's ability to mount an effective defense. *State v. Kurtz*, 2019 MT 127, ¶ 31, 396 Mont. 80, 443 P.3d 479.

¶21    "When considering whether incarceration was oppressive, 'all of the circumstances of the incarceration' are considered, including the duration of incarceration, complexity of the offense, misconduct of the accused, and the conditions of incarceration." *State v. Sartain*, 2010 MT 213, ¶ 22, 357 Mont. 483, 241 P.3d 1032 (quoting *Ariegwe*, ¶¶ 90–93). Lehrkamp was on parole at the time of the offense. He was incarcerated during the pendency of the proceedings below after Probation and Parole revoked and sought secure placement for him. The District Court considered Lehrkamp's length of pretrial incarceration and the testimony regarding the conditions of his incarceration and the detrimental effects his incarceration had on his job, relationships, and health. The court observed that Lehrkamp had suffered from some of his physical ailments prior to his incarceration. It reasoned that Lehrkamp's incarceration at MSP was a consequence of being revoked following a new violent felony charge. The court found that Lehrkamp's pretrial incarceration was not unduly oppressive, which Lehrkamp argues was erroneous.

9

¶22 The record supports the District Court's findings. Some of Lehrkamp's ailments about which he testified existed prior to his incarceration, and there was no medical evidence by which the District Court could find that the delay caused his ailments to worsen. Only 37 days of Lehrkamp's incarceration was at the Lewis and Clark Detention Center, the facility he alleged provided inadequate medical care. While the issue of incarceration on a separate charge is not dispositive, it does inform the oppression calculus. *Ariegwe*, ¶ 92. Lehrkamp's parole was revoked, leading to his incarceration at MSP. Lehrkamp's parole proceeding did not remain pending throughout the PFMA matter, and his incarceration did not depend on the outcome of this proceeding. *Sartain*, ¶ 23. Considering the totality of the circumstances, the District Court did not err by finding that Lehrkamp's pretrial incarceration was not unduly oppressive. *Ariegwe*, ¶ 90.

¶23 Lehrkamp argues that he suffered anxiety and harm to his mental and emotional well-being during the pendency of the PFMA proceedings. A "certain amount of anxiety and concern is inherent in being accused of a crime." *Butterfly*, ¶ 34. The District Court found that, while Lehrkamp testified to anxiety, depression, and being unable to support his family, Lehrkamp did not present sufficient evidence showing his anxiety and concern exceeded that which would be expected for a person facing a persistent felony offender PFMA charge. Lehrkamp cites *Kurtz* to support his argument, but the State correctly notes that case is factually distinguishable. Based on the record, the evidence Lehrkamp presented did not rise to the same substandard medical care and loss of property at issue in *Kurtz*, nor did Lehrkamp make a showing that any delay in bringing the PFMA case to trial

caused his condition. *Kurtz*, ¶¶ 38–39. The District Court did not err when it found the anxiety and concern Lehrkamp alleged was not unduly prolonged or aggravated by the delay in bringing him to trial. *Zimmerman*, ¶ 32.

¶24 Finally, Lehrkamp argues that the delay prejudiced his ability to present an effective defense due to limited communication with his attorney while incarcerated and changes in witnesses' health affecting the reliability of their testimony.[5] Lehrkamp does not take issue with the District Court's finding that there was no affirmative evidence "indicating that [Lehrkamp's] ability to present an effective defense ha[d] been impaired." Rather, Lehrkamp contends that the District Court clearly erred when it failed to assess the impairment of his defense in light of the other *Ariegwe* factors.

¶25 As noted previously, the entirety of the delay was properly attributed to the State, but it weighed less heavily because it was primarily institutional. Lehrkamp's pretrial incarceration was not unduly oppressive, nor did he suffer an excessive amount of anxiety and concern due to the trial delay. Despite the initial communication issues, Lehrkamp's attorney was prepared to take the case to trial on May 16, 2022, even though he had been appointed approximately a month prior. Lehrkamp did not present evidence that the communication issues were caused by a delay in bringing him to trial. The record reflects that Lehrkamp did not substantiate his claim that the degradation of witnesses' health

---

[5] The State responds that Lehrkamp actually benefited from the delay because his first two attorneys "quit" and "the defense was not ready for trial." We agree with Lehrkamp that the record does not support these assertions, nor did they factor into the District Court's determination; thus, we will not consider them.

11

hampered his defense. The District Court did not err by finding that Lehrkamp's ability to mount an effective defense was not prejudiced.

¶26 Balancing the *Ariegwe* factors, the District Court reasoned that the primary cause of the delay was largely institutional due to the court's crowded docket, and with no evidence of substantive harm to his defense, the weighing of all the factors balanced in the State's favor. In the absence of a showing of prejudice to the defense, a speedy trial claim will generally fail "if the government had pursued the accused with reasonable diligence." *Ariegwe*, ¶ 60 (citation omitted). Lehrkamp has made no showing of prejudice or proved a lack of diligence by the State. Rather, Lehrkamp was incarcerated after his parole was revoked, and the State did not conduct itself in a manner outside the institutional norms allowed for a persistent felony offender PFMA charge. On this record, we cannot conclude the District Court erred in concluding that Lehrkamp's right to a speedy trial was not violated and denying his motion to dismiss on those grounds.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous, and its interpretation and application of the law were correct. The District Court's Order is affirmed.

/S/ JAMES JEREMIAH SHEA

12

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE