FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0663

DA 23-0663

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 295N

STATE OF MONTANA,

       Plaintiff and Appellant,

  v.

SKYLER L. GRIEBEL,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-22-33
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

           Kendra Lassiter, Park County Attorney, Selene Koepke, Special Deputy County Attorney, Livingston, Montana

       For Appellee:

           Kirsten Mull Core, Law Office of Kirsten Mull Core, P.C., Bozeman, Montana

Submitted on Briefs:  November 7, 2024

Decided:  December 10, 2024

Filed:

                  _____
                                   Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1       Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2       The State appeals from the Sixth Judicial District Court, Park County's October 20, 2023 Order Granting Defendant's Second Motion to Dismiss for Speedy Trial Violation.

¶3       Skyler Leroy Griebel was arrested on February 8, 2022, and charged with Deliberate Homicide in the death of Tyler Netto. Griebel pled not guilty, and bond was ultimately set at $800,000. Griebel was unable to post bond and remained in custody for the duration of the proceedings.

¶4       On July 15, 2022, Griebel moved to dismiss the case for lack of probable cause. The District Court set a hearing on the motion for December 7, 2022.

¶5       The District Court scheduled a trial for October 24, 2022. At a trial verification hearing on September 12, 2022, Griebel declined to confirm the trial date due to a pending discovery motion in which he alleged that the State was withholding exculpatory evidence concerning cellphone and social media data. The District Court vacated the first trial date and reset the trial for December 12, 2022.

¶6       On October 11, 2022, the State requested a new trial date due to a scheduling conflict with the December 12, 2022, trial setting. Griebel did not respond to the State's

2

request, so the District Court vacated the December 12, 2022, trial setting and reset the trial for January 9, 2023.

¶7    On October 18, 2022, Griebel moved to dismiss the case based on the State's failure to provide him with requested cellphone evidence, which he believed to be exculpatory. The District Court denied Griebel's motion on March 8, 2023, because the State had provided the cellphone evidence in the interim.

¶8    On November 7, 2022, Griebel moved to disqualify Judge Brenda Gilbert due to a possible conflict of interest concerning two potential witnesses in the case. Judge Gilbert recused herself on November 14, 2022, and Judge Ray J. Dayton assumed jurisdiction over the case. Judge Dayton vacated the January 9, 2023 trial setting due to a conflict with his schedule, and reset the trial for March 27, 2023. Griebel did not object to the trial being reset.

¶9    On December 29, 2022, during a hearing on other matters, Griebel renewed his argument that the case should be dismissed for lack of probable cause. The District Court orally granted Griebel's motion for a new hearing on the issue.

¶10    On January 13, 2023, the State moved to vacate the hearing on Griebel's renewed argument that the case should be dismissed for lack of probable cause. The State argued that Griebel had no legal basis to dismiss the case. Griebel replied on January 31, 2023, requesting that the District Court hold the hearing. The District Court vacated the hearing on February 15, 2023. On March 8, 2023, Griebel petitioned this Court for a writ of

3

supervisory control based on the denial of the hearing. Griebel filed an amended petition on March 14, 2023. We denied the petition on March 21, 2023.

¶11 Griebel filed his first Motion to Dismiss for Speedy Trial Violation on February 23, 2023. On July 25, 2023, the District Court denied the motion, finding that the first three *Ariegwe* factors weighed slightly in Griebel's favor but that the fourth weighed sufficiently against him to merit denial.

¶12 On March 13, 2023, Griebel moved for a continuance on the grounds that the State was withholding additional exculpatory evidence, this time concerning crime-scene measurements and DNA testing, which his experts needed to review prior to trial. The State did not object to the continuance on the condition that Griebel sign a written waiver to his speedy trial right. Griebel declined to sign the waiver. The District Court granted the motion to continue over the State's objection and set a fifth trial date for September 11, 2023.

¶13 On June 5, 2023, Griebel moved for Judge Dayton's disqualification and amended the motion on June 7, 2023. We denied that motion on June 13, 2023. Approximately on June 26, 2023, Griebel wrote a handwritten, pro se letter, which the District Court construed as a motion for recusal, and which raised several of the same arguments as were raised in the motion for disqualification. The District Court denied the motion on June 28, 2023.

¶14 On July 25, 2023, Griebel filed a Petition for a Writ of Habeas Corpus with the U.S. District Court for the District of Montana based on the District Court's denial of his

probable cause motion and our denial of his disqualification motion. The U.S. District Court dismissed the petition on August 7, 2023.

¶15 Griebel filed his Second Motion to Dismiss for Lack of Speedy Trial on July 7, 2023. Following a hearing on August 23, 2023, and supplemental briefing, the District Court held on October 20, 2023, that Griebel's right to a speedy trial had been violated. The District Court adopted its findings from its July 25, 2023 denial of Griebel's first speedy trial motion as to the first three factors but found as to the fourth factor that Griebel had been prejudiced by the deaths of three witnesses during the course of the proceedings and the diminished memory of two others.

¶16 "A speedy trial violation presents a question of constitutional law, which this Court reviews *de novo* to determine whether the court correctly interpreted and applied the law." *State v. Chambers*, 2020 MT 271, ¶ 6, 402 Mont. 25, 474 P.3d 1268. We review the factual findings underlying a district court's speedy trial analysis for clear error. *Chambers*, ¶ 6.

¶17 A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution. *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815. If the delay between accusation and trial exceeds 200 days, we evaluate a speedy trial claim by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused. *Ariegwe*, ¶¶ 106-111. No one factor is dispositive by itself; the factors must be balanced, and the

5

unique facts and circumstances of each case must be considered to determine whether the accused has been denied the right to a speedy trial. *Ariegwe*, ¶¶ 105, 112.

1. Length of Delay

¶18   The right to a speedy trial begins when a person has been formally accused or charged by the prosecution, whether by arrest, the filing of a complaint, or by indictment or information. *Ariegwe*, ¶ 42. It is well-established that once the 200-day threshold is triggered, a presumption of prejudice arises, and a speedy trial analysis is mandated. *Ariegwe*, ¶¶ 37, 41. The "further the delay stretches beyond the trigger date, the stronger the presumption . . . that the accused has been prejudiced by the delay." *Ariegwe*, ¶ 107.

¶19   The parties agree that the District Court correctly found that the total length of delay from Griebel's arrest on February 8, 2022, to the date of its order was 619 days. This delay exceeds the 200-day threshold substantially, so the District Court correctly determined that the first factor weighs substantially against the State.

2. Reasons for Delay

¶20   To evaluate factor two, we must identify each period of delay in bringing Griebel to trial, attribute each period of delay to the State or Griebel, and assign appropriate weight to each period of delay based on the specific cause and culpability. *Ariegwe*, ¶ 124. "Any delay not demonstrated to have been caused by the accused or affirmatively waived by the accused . . . is attributed to the State by default." *Ariegwe*, ¶ 65.

¶21   There are four types of delay attributable to the State: intentional, negligent, institutional, and valid. *Ariegwe*, ¶¶ 67-70. An intentional delay is one where the State

6

deliberately attempts to delay the trial in order to hamper the defense and is weighed the most heavily against the State. *Ariegwe*, ¶ 67. The State negligently delays a trial when it fails to diligently bring the accused to trial. *Ariegwe*, ¶ 69. An institutional delay is one attributable to the State but "caused by circumstances largely beyond the control of the prosecutor and the accused." *Ariegwe*, ¶ 68. Valid reasons for delay, such as the complexity of a case or missing witnesses, weigh the least heavily against the State. *Ariegwe*, ¶ 70.

¶22 There are six periods of delay at issue in this case: (1) February 8, 2022, to October 24, 2022 ("First Trial Setting"), (2) October 24, 2022, to December 12, 2022 ("Second Trial Setting"), (3) December 12, 2022 to January 9, 2023 ("Third Trial Setting"), (4) January 9, 2023, to March 27, 2023 ("Fourth Trial Setting"), (5) March 27, 2023, to September 11, 2023 ("Fifth Trial Setting"), and (6) September 11, 2023 to October 29, 2023 ("Dismissal"). The District Court determined that the first five delays were institutional delays attributable to the State but weighing only lightly against it. The District Court did not rule on the sixth delay. The parties do not dispute the District Court's determination as to the first three delay periods, so we do not consider them.

¶23 The State argues that the District Court erred in its determination that the Fourth Trial Setting was an institutional delay attributable to the State because Griebel failed to diligently move for Judge Gilbert's disqualification. To support its argument, the State points to a letter that Griebel filed with the Court pro se on May 16, 2022, and the District Court's characterization of the motion as "untimely" in its July 25, 2023 denial order.

7

Griebel responds that his motion to disqualify was diligently filed based on information known to him only days before he filed it, and that the delay in the Fourth Trial Setting is solely attributable to scheduling conflicts with Judge Dayton's docket.

¶24 "A defendant will be charged with delay caused by his or her pretrial motions," but not where the motion "did not seek to continue the trial or cause a resulting delay." *State v. Kurtz*, 2019 MT 127, ¶¶ 16-17, 396 Mont. 80, 443 P.3d 479; *see also Adams v. State*, 2007 MT 35, ¶¶ 26, 32, 336 Mont. 63, 153 P.3d 601. In *Kurtz*, we held that a district court's consideration of a defendant's motion to suppress did not cause a delay because the defendant filed the motion two months prior to trial, did not intend to cause the delay, and the State did not ask the Judge to rule on the motion and hold the trial. *Kurtz*, ¶¶ 17-18. In *Adams*, we held that a defendant's constructive firing of his counsel less than three weeks prior to trial did cause a delay because the defendant was told that the firing would delay the trial, and the defendant agreed to waive his speedy trial rights. *Adams*, ¶¶ 26, 32.

¶25 Griebel's November 7, 2022 disqualification motion was filed over two months prior to the Third Trial Setting. The State does not argue that Griebel's motion was intended to delay the trial or that Griebel was aware that would be the consequence. The State's primary argument is that Griebel did not diligently investigate potential conflicts and should have discovered the conflict sooner. We are hard-pressed to put much stock in that argument when Griebel discovered the conflict before the State did. More to the point, irrespective of when the conflict was discovered, neither party disputes that it required Judge Gilbert's recusal, which she promptly did. The District Court's determination that

8

the delay in the Fourth Trial Setting was institutional and attributable to the State was not erroneous.

¶26 The State argues that the District Court erred in its determination that the Fifth Trial Setting was an institutional delay attributable to the State because the delay was a result of Griebel's motion to continue. Griebel responds that the continuance was only necessary because the State had not provided DNA evidence or reports from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") that he had requested during discovery.

¶27 "In attributing each period of delay . . . the court must bear in mind that delay requested by a particular party may be attributable to the other party." *Ariegwe*, ¶ 66. In its March 15, 2023 Order on Defendant's Motion to Compel, issued the same day as the Fifth Trial Setting, the District Court determined that Griebel was entitled to the DNA evidence and ATF reports he had requested. The District Court also determined that, while the State had taken steps to secure the requested evidence, it had done so less than a month before the Fourth Trial Setting. Generally, the State's failure to secure evidence that causes a delay is deemed negligent and weighs heavily against the State. *See State v. Johnson*, 2000 MT 180, ¶ 12, 300 Mont. 367, 4 P.3d 654 ("As a general matter, the right to a speedy trial places on the State the burden of diligent prosecution at all stages of a criminal proceeding."). But in this case the record does not reflect when Griebel first requested the ATF evidence, so we are unable to determine what, if any, delay existed between Griebel's request for the ATF evidence and the State's request to obtain it from the ATF. The District Court did not clearly err when it found that the delay was caused by slow processing at the

9

ATF and other laboratories outside of the State's control. The District Court did not err when it determined that the delay caused by the Fifth Trial Setting was institutional and attributable to the State.

¶28 The District Court did not attribute the cause or the weight of the delay between the Fifth Trial Setting and the Dismissal. The State argues that the delay is attributable to Griebel because the Fifth Trial Setting was vacated due to his experts not being ready for trial. Griebel responds that the District Court vacated the Fifth Trial Setting after a hearing on his speedy trial motion and that the State never requested that it be reset. We have held that the State bears the burden of requesting that a court reset a hearing that has been vacated on unclear or accidental grounds. *See State v. Zimmerman*, 2014 MT 173, ¶ 26, 375 Mont. 374, 328 P.3d 1132 (collecting citations). Instead of requesting that the trial be reset, the State complied with the District Court's orders to submit supplemental briefing on Griebel's speedy trial motion, indicating that it understood the delay to be related to the District Court's need for further information regarding the motion. Because the final delay was caused by the District Court's need for further briefing on a pending motion to dismiss, it was an institutional delay attributable to the State but weighing only lightly against it.

¶29 The District Court did not err when it determined that each of the delays in this case were institutional delays attributable to the State. Factor two weighs lightly against the State.

3. The Accused's Responses to the Delay

¶30 We evaluate "the accused's responses to the delay . . . based on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, [and] the accused's pretrial conduct." *Ariegwe*, ¶ 110. We "may not infer that the accused did not want a speedy trial *solely* because he or she did not object to pretrial delay often or at all." *Ariegwe*, ¶ 82 (emphasis in original). Instead, the test is whether the accused's actions indicated he or she "actually wanted a speedy trial." *Ariegwe*, ¶ 84. Generally, we evaluate the accused's desire for a speedy trial based on his or her objection or acquiescence to trial delays, but other "[c]onduct that demonstrates a defendant's desire to avoid trial weighs against him in the overall balancing." *State v. Stops*, 2013 MT 131, ¶ 40, 370 Mont. 226, 301 P.3d 811. In *Stops*, we held that a defendant who "took eight months to secure representation, and . . . filed three motions to continue and two motions to dismiss" had indicated that he did not want a speedy trial. *Stops*, ¶ 40.

¶31 The District Court did not err by determining that Griebel's failures to object to the Second or Third Trial Settings were not enough on their own to indicate that he did not want a speedy trial. But Griebel also engaged in extensive motion practice that was of, at best, dubious merit. Griebel filed two motions to dismiss on grounds other than a claim of speedy trial violations, both of which were denied. Griebel filed two petitions for writs of supervisory control with this Court, both of which were denied. After Judge Gilbert recused herself and Judge Dayton assumed jurisdiction, Griebel filed two motions to

11

disqualify Judge Dayton, and a separate letter requesting Judge Dayton to recuse himself, all of which were denied. Griebel filed a habeas corpus petition with the U.S. District Court, which the U.S. District Court dismissed.[1] Much of Griebel's pretrial motion practice was repetitive. Even as to Griebel's multiple discovery motions, the District Court issued a number of orders prior to the March 2023 trial rejecting Griebel's claims that the State was acting in bad faith. Griebel's lack of desire for a speedy trial was best summed up by his own counsel's statement at a February 8, 2023 hearing, in which she acknowledged: "No, I don't want there to be a trial. I want the Court to uphold the Montana Constitution and my client's right to not be charged with something that doesn't have any iota or any probable cause that he ever committed a crime."

¶32 The District Court erred when it determined that factor three weighed in favor of Griebel. A thorough review of the record, including Griebel's actions and his counsel's statement, evince no basis for determining that he had any desire for a speedy trial. Factor three weighs substantially against Griebel.

4. Prejudice to the Accused

¶33 We assess whether "the accused has been prejudiced by the delay in light of the interests the speedy trial right was designed to protect." *Ariegwe*, ¶ 111. The spirit of the speedy trial right shields the accused from (1) oppressive pretrial incarceration, (2)

---

[1] Griebel's habeas corpus petition with the U.S. District Court was filed on July 25, 2023; it challenged this Court's order denying his petition for writ of supervisory control, issued over four months earlier, and the District Court's order denying his motion to disqualify Judge Dayton, issued six weeks earlier.

excessive anxiety and concern arising out of the unresolved criminal charges, and (3) the possibility a prolonged delay will impair the accused's ability to present an effective defense as evidence or witnesses' memories fade. *Ariegwe*, ¶ 111.

¶34 The District Court determined that Griebel was not subject to oppressive incarceration and that any anxiety he suffered was "more attributable to and consistent with the nature of his charges than the delay in commencing trial." Griebel argues that the District Court erred when it determined that the conditions of his incarceration were not oppressive because he had limited access to legal research materials, contracted several infections while incarcerated, was unable to exercise in his cell or outdoors, was concerned that other inmates might be able to overhear his communications with his counsel, and encountered standing water and rust in the jail's shower facilities.

¶35 To determine whether a term of incarceration was oppressive, "[w]e consider the duration of the incarceration, the complexity of the charged offense, any misconduct by the accused directly related to his incarceration, and the conditions of the incarceration, such as overcrowding, recreational opportunities, adequate food, climate control, proper medical care, cleanliness, and legal research capabilities." *State v. Couture*, 2010 MT 201, ¶ 56, 357 Mont. 398, 240 P.3d 987; *see also State v. Velasquez*, 2016 MT 216, ¶ 34, 384 Mont. 447, 377 P.3d 1235; *State v. Hesse*, 2022 MT 212, ¶¶ 17-18, 410 Mont. 373, 519 P.3d 462. "The question here is one of oppressiveness, not merely occasional unpleasantness." *Ariegwe*, ¶ 93.

¶36     In *Couture*, we held that a 924-day period of incarceration was not oppressive given the complexity of a deliberate homicide charge. *Couture*, ¶ 59. In *Velasquez*, we held that jail conditions including "visible black mold," non-potable water, the inability to exercise outdoors, and inability to communicate with family or see visitors were oppressive in light of the relatively minor charges the defendant faced. *Velasquez*, ¶ 34. In *Hesse*, we found that jail conditions were not oppressive where a defendant was provided with medication other than his preferred prescription and was only able to access his counsel for limited periods. *Hesse*, ¶¶ 17-18.

¶37     Griebel's 619-day period of incarceration is significantly shorter than that in *Couture*, and Griebel faces the same serious charge of deliberate homicide. The conditions Griebel alleges do not rise to those in *Velasquez*. Captain Jay O'Neill, who was in charge of the facility where Griebel was incarcerated, testified that he was not aware of any mold in the facility, that he regularly sees inmates in the facility exercising using bars installed in their cells, and that, while there was standing water in the shower facilities periodically, he called a plumber to address it whenever he was made aware. Griebel testified that his infections were treated within the same week that he reported them. He did not provide any evidence that his conversations with his counsel were overheard by other inmates, only that the door to the room where the conversations took place did not always shut properly. Griebel also conceded that he was able to access some legal resources via a kiosk. As in *Hesse*, these inconveniences, while certainly rising to the level of occasional unpleasantness, do not amount to oppressiveness.

¶38 The District Court determined that Griebel's defense had been impaired by delay based on the deaths of three witnesses (Rhonda Birkeland, Lori Glasson, and Casey Anderson), the diminished memory of a fourth (Walter Brandon), and the destruction of Officer Connor Wager's video footage of Griebel's arrest. The impairment of the accused's defense is the most important of the three prejudice considerations. *State v. Morrisey*, 2009 MT 201, ¶ 71, 351 Mont. 144, 214 P.3d 708. The primary concern is that "time may erode the accuracy of witness testimony and exculpatory evidence, thereby impairing the defendant's ability to present an effective defense." *Morrisey*, ¶ 71. In *Morrisey*, we held that prejudice to a defendant is diminished where he or she had "ample time" to interview witnesses who died prior to trial. *Morrisey*, ¶ 70.

¶39 The District Court found that Birkland died on June 6, 2023, Glasson died on December 11, 2022, and Anderson died on December 16, 2022.[2] Griebel was arrested on February 8, 2022, and secured his current counsel by May 25, 2022. He does not allege that any of the three witnesses were unknown to him at the time. He alleges that Glasson refused to be interviewed without the State present but does not allege that the State refused to schedule an interview. He had just under seven months to interview Glasson and Anderson and over a year to interview Birkland. This constitutes ample time, diminishing, but not eliminating, the prejudice caused by their deaths.

---

[2] The State asserts that Anderson died on September 19, 2022, but does not point to any evidence in the record that would render the District Court's finding to the contrary clearly erroneous.

15

¶40     The State argues that the District Court erred when it determined that Brandon's memory had been diminished by the passage of time without hearing testimony from Brandon. The District Court did hear testimony at a hearing on August 23, 2023 from Griebel and one of his attorneys, Kirsten Mull Core, which it credited. The District Court did not clearly err when it determined that Brandon's memory had been diminished based on the evidence before it. Nor did it err when it determined that the loss of Officer Wager's video footage was prejudicial, since several witnesses at the hearing noted that Officer Wager did not seem to remember the events of the arrest. The District Court did not err when it held that factor four weighed against the State.

¶41     We conclude by balancing the factors. *Ariegewe*, ¶ 112. Factor one weighs significantly against the State because the 619-day delay exceeds the 200-day threshold significantly. Factor two weighs lightly against the State, because, as the District Court correctly determined, each delay was institutional. Factor four also weighs lightly against the State because the loss of three witnesses, the diminished memory of two others, and the loss of video footage of his arrest prejudiced Griebel's defense, but Griebel took no steps to mitigate the prejudice. Factor three weighs heavily against Griebel and also informs the weight that we assign to the other three factors. *Ariegwe*, ¶ 110. In light of Griebel's clear disinterest in bringing his case to trial, expressed with both his actions and his counsel's words, as detailed above, the weight of the other three factors is diminished considerably. Griebel was not deprived of his right to a speedy trial.

¶42     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were incorrect. We reverse and remand for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE